[No. 8,595. Department One.—October 28, 1884.]

SUTTER STREET RAILROAD COMPANY, Respondent, v. JULIUS BAUM and HENRY SHRIER. JULIUS BAUM, Appellant.

Corporation—Contract with Director — Rescission.— Certain promissory notes and a mortgage to secure their payment, given by a corporation for money borrowed of a director, set aside on the ground that the rate of interest was excessive, and because the amount included in the notes and mortgage was greater than the amount borrowed, the additional amount being intended as security to the lender against taxes on account of the mortgage.

ID.—TENDER—PLEADING.—No tender was required before commencing the action. The plaintiff could not determine in advance the amount to be repaid on a rescission of the contract, and the offer in the complaint to refund such sum as the court might direct was sufficient.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order refusing a new trial.

The action was brought to rescind the notes and mortgage on the ground of fraud. The loan was for five years, the amount being one hundred and twenty-five thousand dollars, and the rate of interest ten per cent. per annum. The agreement for the loan was made on the 21st of November, 1878, and evidenced on the part of the corporation by a resolution of its board of directors. The resolution referred to a previous offer by Henry Shrier, one of the defendants, to make the loan and advance the money from time to time, as required by the corporation; and after accepting the offer, provided that the president should give the notes of the corporation for such advances, and a mortgage upon the corporate property to secure their payment. The offer was communicated to the board by the defendant Baum, acting ostensibly as the agent of Shrier; but the court found that he was really acting for himself, and that Shrier merely lent his name to the transaction. The finding is quoted in the opinion. Baum was a director of the corporation, and Shrier was his partner in business. Prior to the 10th of July, 1879, advances were made, in pursuance of the resolution, to the amount of one hundred thousand dollars. For these advances the notes of the corporation were given, but the mortgage had not been executed. In the meantime, the present constitution was adopted, to go into effect on the 1st of January following, under which the mortgage would become an interest in the property for the purpose of taxation, and to that extent the payment of the taxes would devolve upon the mortgagee. In this condition of things counsel was consulted, who, in conjunction with the counsel for the corporation, prepared another resolution, to take the place of the previous one, and the resolution so prepared was adopted by the board of directors on the 10th of July, 1879. Baum did not vote on either of the resolutions. The board consisted of seven members, and

the resolutions were passed by the votes of the other six. The second resolution differed from the first only in respect to the amount of the loan, which was stated at one hundred and thirty-seven thousand dollars; but, in point of fact, the loan was not to be increased, and it was understood that the additional sum of twelve thousand five hundred dollars included in the resolulution, and to be also included in the notes and mortgage, should be available to the lender simply as a means of indemnity against such taxes as might be imposed upon his interest as mortgagee under the new constitution. This understanding was merely verbal, and on the adoption of the resolution the residue of the loan was advanced, and the notes and mortgages in question were executed to Shrier, who subsequently assigned them to Baum. The notes previously given were surrendered and cancelled. The court found that from the 21st of November, 1878, the date of the first resolution, until the 10th of July, 1879, when the second resolution was adopted, ten per cent. per annum was a reasonable rate of interest; and that thereafter nine per cent. was a reasonable rate, the lender paying the mortgage tax. The judgment was, that the notes and mortgage be rescinded and delivered up for cancellation, on the repayment of the amount loaned, with interest as therein specified. The action was commenced on the 26th of June, 1880.

*Wm. H. Sharp,* for Appellant.

An offer to pay or tender of the amount actually due was a condition precedent to the right to maintain the action. (*Herman* v. *Haffenegger,* 54 Cal. 161; *Bohall* v. *Diller,* 41 Cal. 532; *Morrison* v. *Lods,* 39 Cal. 381; Civil Code, §§ 1689, 1691, 3406; *Duncomb* v. *N. Y., H. & N. R. R. Co.,* 84 N. Y. 199; *Harpending* v. *Munson,* 91 N. Y. 653; *Mayor, etc.,* v. *Huff,* 60 Ga. 232; *Tuthill* v. *Morris,* 81 N. Y. 94; *Trust Co.* v. *Weed,* 9 Rep. 779; *Hanna* v. *Shields,* 34 Ind. 84; *Cobb* v. *Hatfield,* 46 N. Y. 533; *Bassett* v. *Brown,* 105 Mass. 551; *Rosewelt* v. *N. Y. & H. R. R. Co.,* 45 Barb. 554.) A director may loan money to his company on terms as favorable as an outsider would, and the contract will be valid. (Taylor on Corp., §§ 632–4; *Santa Cruz R. R. Co.* v. *Spreckles,* 65 Cal. 193; *Seely* v. *San Jose In. M. & L. Co.,* 59 Cal. 23; *Campbell's Case,* L. R.

4 Ch. Div. 470 ; *Twin Lick Oil Co.* v. *Marbury,* 91 U. S. 589 ; *Hallam* v. *Indianola Hotel Co.*, 13 Rep. 361; *Hotel Co.* v. *Wade,* 97 U. S. 13 ; *Harts* v. *Brown,* 77 Ill. 226 ; *Merrick* v. *Peru Coal Co.*, 61 Ill. 472 ; *Buell* v. *Buckingham,* 16 Iowa, 284.)

If the mortgage had not existed, the company would have had to pay the additional amount paid by Baum.

Why should Baum be deprived of the money actually and honestly expended to preserve the property of the corporation ?

The new constitution does not affect the agreement to pay the mortgage tax.

It was left to counsel of both parties, to so place the matter that the contract, as made, should be carried out.

They hit upon a plan of estimating the amount of the tax, and giving notes therefor.

Under no circumstances was the company to be responsible on these notes beyond the amount actually paid.

The new constitution was not in force when the notes and mortgage were made.

Concede the company had the right to rescind the contract of loan at any time ; that it exercised its right seasonably, and that a tender was unnecessary. The question remains, whether the decree is just and equitable under any conceivable view of this case.

It makes Baum pay back the difference between 10 per cent. and 9 per cent. on $125,000 actually advanced, because there happened to be a subsequent fall in the rate of interest.

The company voluntarily paid this interest, with *full knowledge of all the facts* in relation to the loan, the court finding that the interest of ten per cent. was *just and reasonable when the loan was made.*

If the company is entitled to rescind the contract, as to the $2,500 notes given to cover the mortgage tax, it must repay what Baum has paid for taxes, amounting to $5,436.43.

The company has had the benefit of the payment, the amount of the mortgage being deducted from the assessed value of its property.

*W. W. Cope,* also for Appellant.

A corporation may borrow money from one of its directors through the agency of the others, and give a mortgage to secure

its payment.    Such a transaction, not tainted with actual fraud, is valid and binding.    The leading authorities on the subject are cited in the brief of Mr. Sharp, and there is no real conflict between these authorities and the cases relied on by the counsel for the respondent.

Conceding that Baum was the real lender, it does not follow that the transaction was fraudulent.    If free from fraud in other respects, it cannot be treated as fraudulent merely because the name of Shrier was used by Baum instead of his own.    It being competent for Baum to make the loan in his own name, he could do so in the name of another, without subjecting himself to the charge of a fraudulent concealment.

The arrangement embodied in the second resolution was just and proper.    The amount to be included in the notes and mortgage, over and above the actual loan, was intended as a means of indemnity to the lender against the mortgage tax imposed by the present constitution, which was to go into effect on the first of January, thereafter, and under which the lender would have no remedy for the repayment of any taxes thus imposed.

It cannot be pretended that the transaction in this respect was invalid, as being in violation of the provisions of a constitution not then in force, nor can it be argued with any show of reason that it was unjust or inequitable.

At the time of the agreement for the loan, in November, 1878, debts and credits, secured or unsecured, could not be taxed. This court had so decided; and as there were no taxes which the lender could be required to pay, the subject was not considered in making the agreement.    The lender was to have so much interest, and the company necessarily understood that he would get it free of taxes.    But the new constitution was afterwards framed and ratified by the people, and the attention of the parties was then called to the question of taxes.

If any fraud was committed, I am unable to perceive it.    The directors were fully advised of the nature and circumstances of the arrangement, and no additional burden was imposed upon the company.    Its position after the arrangement was precisely the same as before, and the only effect was to relieve the lender of a charge which did not exist when the agreement for the loan was made.

It is unfortunate that the character of the transaction was not disclosed on the face of the papers, but it clearly appears that no fraud was intended. The directors were fully informed on the subject, and in determining questions of fraud, the substance must be regarded rather than the form. No fraud being intended, the transaction cannot be treated as fraudulent, because of the form in which the parties have chosen to put it. A contrary doctrine would be repugnant to the plainest principles of justice, and no authority can be found to sustain it.

In regard to the rate of interest, the court finds that the rate was just and reasonable down to the 10th of July, 1879, the date of the last resolution ; but as to the period during which interest was subsequently paid, that the rate was excessive, and that nine per cent. was a reasonable rate, the lender paying the taxes upon the debt and mortgage.

The portion of this finding relating to the latter period is clearly against the evidence, but as the agreement for the loan was made and most of the money advanced prior to the 10th of July, it could not be a fraud to carry the transaction out on the basis of the original resolution, fixing the rate at ten per cent.

The finding that Baum used his position as a director for the purpose of obtaining an undue advantage, is entirely unsupported by evidence. He refrained from voting, and there is not the slightest evidence that he attempted in any way to influence the action of the other directors.

But the finding is obviously insufficient. What was said or done by Baum to induce an acceptance of the loan ? What influence was brought to bear, and what undue advantage was obtained ? The statements contained in the finding would not be sufficient in a pleading. Where relief is sought on the ground of fraud, the facts constituting the fraud must be alleged. A general allegation is not enough. This is well settled as a rule of pleading, and the reason of the rule is equally applicable to a finding. The facts should be given, so that the party against whom the finding is made may know on what grounds to impeach it. The finding here is nothing more than a conclusion, without any facts to sustain it.

*Wilson & Wilson,* and *J. P. Hoge,* for Respondent.

LXVI. CAL.—4.

A party occupying the position of defendant Baum can make no contract with the board of which he is a member, nor act as the representative of another in making such contract. (See *Davis* v. *Rock Creek Lumber & Flume Co.*, 55 Cal. 359; *San Diego* v. *S. D. & L. A. R. R. Co.*, 44 Cal. 113 ; *Andrews* v. *Pratt*, 44 Cal. 309; *Farmers' & Merchants' Bank of Los Angeles* v. *Downey*, 53 Cal. 466; *Wilbur* v. *Lynde*, 49 Cal. 290 ; *O'Connor* v. *Flynn*, 57 Cal. 293 ; § 18, art. xii., Const.)

No one occupying the position of trustee, director, agent or solicitor, or any other confidential relation, can act for himself in the matter of the trust, nor for any one else. (*Pickett* v. *School District No.* 1, 25 Wis. 551 ; *Aberdeen R. R. Co.* v. *Blakie*, 1 Macq. 461 ; *Cumberland Coal Co.* v. *Sherman*, 30 Barb. 553 ; *European & N. A. R. R. Co.* v. *Poor*, 59 Me. 277 ; *Koehler* v. *Black River Iron Co.*, 2 Black, 715, 720 ; *Ex parte Bennett*, 10 Ves. 381 ; *Bain* v. *Brown*, 56 N. Y. 288 ; Bigelow on Fraud, 248, and cases there cited in notes ; Field on Corporations, §§ 174 and 175, and notes ; *Dobson* v. *Racy*, 3 Sand. Ch. 62 ; *Ex parte James*, 8 Ves. 345 ; *Thomas* v. *Brownville etc. R. R. Co.*, 10 Rep. 547, and affirmed in 109 U. S. 522 ; *Wardell* v. *U. P. R. R.*, 4 Dill. 330 ; same case affirmed in 103 U. S. 651 ; *Ogden* v. *Murray*, 39 N. Y. 204, 206, 207, 208 ; *Hoyle* v. *Plattsburgh R. Co.*, 54 N. Y. 314 ; *Davoue* v. *Fanning*, 2 Johns. Ch. 261.)

The cases all hold that it makes no difference, even if the bargain is a good one for the corporation, or that no injury resulted to the plaintiff. The principle is that the agent or the trustee shall not act at all for his own benefit, and the principal may always repudiate the whole transaction. The principal need not prove either benefit or loss, and no question of benefit or loss can be made.

McKINSTRY, J.—1. The court below found : "Prior to the 21st day of November, 1878, and at all times herein mentioned, the defendant Shrier was, and is, the partner of the defendant Baum; that although the said notes and mortgage were made to the said Shrier by name, yet he never had any real or beneficial interest therein, and never advanced any part of the said $125,000 (the full amount received by plaintiff) ; that the defendant Baum

was the person who advanced all of said money, and that he was the real and substantial owner of all of said notes and mortgage; and that he negotiated the said loan, and arranged the terms thereof with his co-directors of said corporation; that the said Shrier merely lent his name to the transaction; * * * that about the 18th of August, 1879, the said notes and mortgage were formally assigned, transferred and delivered to the said Baum; and that ever since said last mentioned day, said Baum has been the (legal) owner and holder thereof, and still is such owner and holder."

There was sufficient evidence to uphold the finding.

2. It is not necessary to say whether the notes and mortgage were or were not void. For the purposes of this decision, it may be conceded, as is claimed by appellant, that the doctrine laid down by Mr. Taylor (in his Treatise on the Law of Private Corporations, § 634), is just, and sustained by authority. That writer says : " The following rules regarding loans to a corporation from its officers seem deducible from the preceding and other cases. Directors and other officers may, when they honestly deem it for the interest of the corporation to borrow, advance it money on terms as favorable as any on which they could have procured the money for it from other sources ; and they may take from the corporation security for their loan," etc.

3. The court below found " from the 10th day of July, 1879, (the date of the resolution which purported to authorize the execution of the notes and mortgage), ten per cent. was an excessive and unjust rate of interest ; and from and after said day, according to current market rates, nine per cent. per annum upon said $125,000 was a fair, just and reasonable rate of interest, the mortgagee paying the tax upon said debt and mortgage."

The most that can be conceded to the defendant Baum is, that he believed it to be for the interest of the corporation to borrow one hundred and twenty-five thousand dollars, the money which it actually received. The finding, of course, is to be applied to the transaction before the court, and is to the effect that nine per cent.—the mortgagee paying the taxes—was a just, fair, and reasonable rate to be paid for the use of the one hundred and twenty-five thousand dollars, reference being had to the security in fact given, and to the usual rates paid in similar

cases. Accepting the doctrine laid down by Taylor, and it being conceded that defendant Baum was authorized to advance the money at nine per cent., secured by mortgage on the property of plaintiff, he to pay all taxes on the mortgage, he was not justified in contracting with his co-directors that, in consideration of one hundred and twenty-five thousand dollars, advanced by him, he should receive notes in the aggregate amounting to one hundred and thirty-seven thousand five hundred dollars, bearing interest at the rate of ten per centum per annum, even though by oral contemporaneous agreement it was provided that of the excess beyond one hundred and twenty-five thousand dollars and interest, the plaintiff should be required to pay only the sum which the defendant might pay for taxes upon the property, with interest thereon.

The court was, therefore, justified in holding that the notes and mortgage should be satisfied, upon payment by plaintiff of $125,000, with interest thereon from July 10, 1879, at the rate of nine per cent. per annum, less the interest paid since that date.

4. The court also found, " that in negotiating, arranging and bringing about the transaction, the defendant Baum used his position as director to obtain for himself an undue advantage," etc. The evidence sustained the finding, and it follows that from the amount to be paid by plaintiff there should also be deducted one hundred and fifty-eight dollars, expenses of making and acknowledging the mortgage.

5. In its complaint plaintiff offers to comply with all the terms imposed by the court as conditions to a decree in its behalf, and offers to refund to the defendants any and all sums of money received from them or either of them, together with such amount of interest thereon as may be just and equitable. Where a plaintiff comes into a court of equity asking for the rescission in whole or in part of a contract, or to be relieved of a portion of a contract, and the taking of an account is necessary for the ascertainment of the sum to be repaid, or the sum is to be liquidated by an adjudication based on evidence of facts independent of the terms of the contract itself, an offer to refund such sum as shall be decreed is a sufficient offer to do equity. In such case the plaintiff cannot determine, in advance of the suit, the

amount by him to be repaid, and is not required to make an actual tender of such amount before commencing his action.

Judgment and orders affirmed.

McKee, J., and Ross, J., concurred.