(38 Misc. Rep. 481.)

ROBLEE v. MASONIC LIFE ASS'N OF WESTERN NEW YORK.

(Supreme Court, Trial Term, Fulton County. July, 1902.)

1. BENEFIT ORDER—MEMBERSHIP.
    An application for membership in a benefit society provided that it
    should not be in force until a certificate of membership had been delivered
    to the applicant during his life, and while in good health. *Held*, that
    the death of the applicant before the certificate had even been mailed
    to him precluded him from ever having been a member of the so-
    ciety.

2. SAME.
    Where, because of the death of the applicant before certificate of
    membership received, he had never become a member, the doctrine of
    estoppel and waiver cannot apply to the contract of membership.

Action by Minnie Roblee against the Masonic Life Association of
Western New York. Verdict directed for defendant. Motion to set
aside the order and for a new trial. Denied.

Richard J. Donovan, for the motion.
Harry D. Williams, opposed.

SPENCER, J. Elementary principles, if thought out clearly, will
resolve the difficulties of this case. The facts are without dispute.
The defendant is an incorporated association, formed by certain
of the Masonic fraternity, for the purpose of aiding the widows and
orphans of its deceased members. It has its office and conducts its
business at the city of Buffalo, in this state. In October, 1900, the
husband of the plaintiff was a Mason in good standing, residing at

¶ 1. See Insurance, vol. 28, Cent. Dig. § 1856.

Blue Mountain Lake, N. Y., and on the 23d of that month mailed an application to the defendant, at its place of business, to become one of its members. This application, among other things, contained the following: "It is also understood that my membership shall not be in force until a certificate has been delivered to me during my life and in good health." It was received by the defendant, and a certificate of membership, dated October 31st, was signed by its officers, and at the close of business, November 2d, deposited in the post office at Buffalo, directed to the plaintiff's husband at Blue Mountain Lake. In the meantime the plaintiff's husband had been taken ill of pneumonia, and after a sickness of 48 hours died. His death occurred about 18 hours before the mailing of the certificate. The certificate provides for the payment of $1,000 by the defendant to the plaintiff within 90 days after satisfactory proofs of the death of her husband as a member of the association. This action is upon the certificate to recover the amount named therein. The defendant resists on the ground that plaintiff's husband never became a member of the association, special reference being made to the clause in his application as to delivery of the certificate to him in his life and good health. The plaintiff insists that defendant has waived compliance with that provision by mailing the certificate to the deceased, and by treating with her after the death of her husband, and after the certificate had come to her possession, as if such certificate were in force.

It is well established in this state that a general agent of an insurance company may waive stipulations and provisions contained in a policy with respect to conditions upon which it shall have inception and go into operation by delivering the policy with knowledge of all the facts and receiving the premium. Walsh v. Insurance Co., 73 N. Y. 5; Forward v. Insurance Co., 142 N. Y. 382, 37 N. E. 615, 25 L. R. A. 637; Wood v. Insurance Co., 149 N. Y. 382, 44 N. E. 80, 52 Am. St. Rep. 733; Gray v. Insurance Co., 155 N. Y. 180, 49 N. E. 675; Ames v. Insurance Co., 40 App. Div. 465, 58 N. Y. Supp. 244. I see no reason why this rule should not have application to certificates of membership in benefit associations such as the defendant. The certificate issued by the defendant was in effect a policy of insurance upon the life of plaintiff's husband, and, if a delivery of the same to him had been effected at any time prior to his death, the question as to whether the defendant did or did not intend to waive its rights by making such delivery might very well be a question for the jury to pass upon. But in this case there was no delivery of the certificate to the husband of the plaintiff, or to any one for him during his life. There can be no delivery, either actual or constructive, to a person who is dead. Hence plaintiff's husband never became a member of the defendant association for the reason that the preliminary negotiations to that end were based upon the condition that his membership should not be in force until a certificate had been delivered to him during his life, and, as we have seen, he died before the defendant had performed any act tantamount to such delivery. In order to constitute a waiver of the condition contained in the application of plaintiff's husband, upon which he

was to become a member of defendant's association, there must
have occurred something, as between him and the defendant, by which
such condition was waived, and he constituted a member without
any delivery of the certificate. But there is no fact or circumstance
from which any such result may be inferred.

But it is contended that the defendant, since the death of plaintiff's
husband, has waived forfeiture of the contract for nondelivery, by
treating the same as if it had been delivered, and receiving from the
plaintiff the sum of $2.62 for unpaid assessments. Titus v. Insurance
Co., 81 N. Y. 410, 419. I should be glad to see my way clear to
such a conclusion, but the fact remains to bar the way that there was
no contract upon which a forfeiture could operate. Delivery of the
certificate was a condition precedent to the inception of any agree-
ment between the parties. There can be no forfeiture of a contract
that has no existence. Forfeiture relates to something done or
omitted by which one's rights are lost. Neither plaintiff nor her
husband forfeited any rights, because they had none to forfeit. For-
feiture assumes a pre-existing valid contract or obligation, and, for-
feiture not being favored in the law, any inconsistent acts or dealings
by the party claiming forfeiture may be regarded as a waiver thereof.
But no such situation is revealed by the facts in this case. The de-
fendant is not claiming that the plaintiff or her husband forfeited the
contract. Its position is that no contract was ever consummated,
and its contention is supported by the undisputed facts, from which
no other conclusion can be drawn.

But the plaintiff claims, further, that although her husband never
became a member of the defendant association, and although no
contract was ever consummated by and between her husband and
the defendant, nevertheless the defendant, by treating with her after
the death of her husband as if he were such member and as if such
contract obligations existed, may not now claim to the contrary.
This, I think, is the most favorable view that can be taken of the
plaintiff's contention. Although not so denominated by her, and al-
though there is much confusion of terms in the books, nevertheless
the doctrine which she thus invokes is not that of waiver, but of
estoppel. In order to support this contention, the plaintiff must es-
tablish a new promise or agreement founded upon a valuable con-
sideration. Belknap v. Bender, 75 N. Y. 446, 31 Am. Rep. 476;
Ripley v. Insurance Co., 30 N. Y. 136, 86 Am. Dec. 362. Estoppel
differs from waiver in that the latter is simply a voluntary relinquish-
ment of a right with knowledge of all the facts,—an expression of
intention, by speech or conduct, not to demand a certain thing which
one has a right to demand. To constitute waiver there need not
be a new agreement or a valuable consideration; but where, as in
this case, there never existed any right on the one side nor obliga-
tion upon the other, a mere waiver is insufficient to create such right
or impose such obligation. If the plaintiff did not have a cause of
action against the defendant, anything which the defendant might
waive would be ineffectual to create one. It follows, therefore, that,
if such right or obligation now exists, it exists by virtue of a new
promise or contract which has been made or formed by and between

the plaintiff and the defendant, whereby the defendant became bound, pursuant to the terms of the proposed agreement with her husband. What, then, is the character of this new agreement? To put the matter broadly, she alleges that the defendant agreed to pay her the amount named in the membership certificate in consideration that she forward to the defendant the $2.62 for assessments that had not been made at the time of her husband's death. That such a contract would have been benevolent and in harmony with the spirit and purpose of the defendant association may be true, but the question for the court is whether there is any evidence of such a contract.

On November 25th plaintiff caused notice of her husband's death to be sent to defendant, and requested blanks upon which to make proof of death. On the 28th defendant forwarded blanks for that purpose. These blanks were filled out, and about December 27th mailed to defendant. On the 29th they were returned for lack of county clerk's certificate. This was supplied, and the proofs returned to defendant. January 12th following the secretary of the defendant wrote to the plaintiff as follows:

"Buffalo, N. Y., Jan. 12th, 1901.

"Mrs. Minnie Roblee, Blue Mountain Lake—Dear Madam: We acknowledge receipt of the properly executed proofs of death of your husband, the late William H. Roblee. The claim will become liable for $2.62 representing assessments for deaths on hand and unassessed at the date of Mr. Roblee's death. This amount may be paid any time prior to settlement of the claim. Our by-laws provide for the payment of losses ninety days after receipt of satisfactory proofs of death, and we shall be prepared to pay this at the expiration of that time.

"Very truly yours,                              N. O. Tiffany, Secy."

Thereupon the plaintiff sent to the defendant the sum of $2.62 in payment of the assessments referred to, receiving from the defendant the following receipt:

"$2.62.                                   Buffalo, N. Y., Jan. 23rd. 1901.

"Masonic Life Association of Western New York, Masonic Temple: Received of Mrs. Minnie Roblee two & 62/100 dollars on account of asst. in full, claim of W. H. Roblee.          Nelson O. Tiffany, Secretary.  J."

Nothing further occurred until the 29th of January, when the defendant's secretary wrote plaintiff that since receiving the proofs of death they had found that her husband was not alive when the policy was mailed, calling her attention to the clause in the application as to delivery, stating that the policy was mailed on the evening of November 2d, that her husband died that day after an illness of 48 hours as shown by the proofs, and that there was no liability on the part of the defendant. On February 22d defendant returned $2.62 to the plaintiff, which she declined to accept.

I find no evidence here of any agreement between the plaintiff and the defendant. The writer of the letter of January 12th was clearly speaking of the policy as in force, with no thought of instituting a new agreement as between the defendant and the plaintiff. There is not the slightest proof that the defendant then had knowledge of the nondelivery of the policy to plaintiff's husband. The most that can be said is that at that time information of the fact of nondelivery was within defendant's reach. The sending by plaintiff

to defendant of the money to meet the assessments referred to was not the paying of a valuable consideration in support of a new agreement. The payment was made on the assumption by both parties that the policy had gone into effect and was valid and binding, and that the assessments were obligations flowing therefrom. It cannot be said that both parties entered into a new agreement without intending so to do. But such must be the result if we spell out an agreement from the facts presented.

It follows, therefore, that the order of the court made at the close of the case, directing the jury to find a verdict for the defendant, must stand, and the motion for a new trial denied. Judgment for defendant, and order for new trial denied, with costs.

Judgment for defendant, and motion denied, with costs.