[Civ. No. 4387. Second Appellate District, Division Two.—June 13 1924.]

RUPERT W. HASEROT, Respondent, v. CLARENCE D. KELLER, Appellant.

[1] VENDOR AND VENDEE—CONVEYANCE BY FRAUDULENT VENDEE TO INNOCENT PARTY — REMEDY OF DEFRAUDED VENDOR. — When the fraudulent vendee has conveyed the property, or any interest therein, to a third party, who, by reason of innocence, acquires a good and valid title as against the equity of the original vendor, the latter has a remedy against the substituted property.

[2] ID.—PATENTS—TRANSFER TO INNOCENT LICENSEES—RIGHTS OF DEFRAUDED CO-OWNER—ACCOUNTING OF PROFITS.—Where a co-owner of a windshield patent, by fraudulent conduct, induces the other co-owner to assign to him such other co-owner's interest in the patent and thereafter, and after he has caused the letters patent to be reissued to him by the government, he grants to innocent licensees the exclusive right to manufacture and sell such patented device, he will be held accountable to the defrauded co-owner for

---

1. See 12 Cal. Jur. 785.
2. See 20 Cal. Jur. 873.

the profits which accrued to the former by his wrongful exercise of his co-owner's right.

[3] ID.—AGREEMENT TO REASSIGN INTEREST—FORFEITURE.—Where the inventor of a windshield improvement enters into a contract with another whereby the latter agrees to make certain money advances and to exploit the invention, and in consideration therefor he is assigned a one-half interest in the invention and the patent, a provision in such contract that if said person thus receiving a one-half interest in the invention and the patent shall fail to sell a minimum of twenty-five sets of windshields per month he will "reassign his undivided one-half interest in said invention and in said patent . . . on demand . . . said demand not to be made prior to a year" from the date of the contract, partakes of the nature of an agreement for a forfeiture, and forfeitures are not favored in law.

[4] ID.— WAIVER OF FORFEITURE — CONSIDERATION. — Any inconsistent acts or dealings by the party claiming a forfeiture will be regarded as a waiver thereof; and to constitute a waiver there need not be a new agreement nor a valuable consideration—a simple voluntary relinquishment being sufficient to constitute such waiver.

[5] ID.—REQUEST TO POSTPONE ACTION—WAIVER OF RIGHT OF FORFEITURE.—Where shortly after the making of the contract whereby, in consideration of the assignment to him of a one-half interest in the invention of defendant and the patent issued thereon, plaintiff agreed to exploit said invention, defendant was requested to furnish plaintiff with the necessary samples wherewith to put the invention on the market and he replied that he did not want plaintiff to sell any of the articles until after the issuance of the letters patent (application for which was then pending), this alone was a waiver of defendant's right to a forfeiture predicated upon plaintiff's failure to sell a stipulated number of the patented articles per month and, in default thereof, to reassign his one-half interest to defendant.

[6] ID.—ABANDONMENT OF CONTRACT—FRAUDULENT REPRESENTATIONS — INTENT — WAIVER. — Where defendant falsely represented to plaintiff, prior to the issuance of the letters patent, that by reason of certain improvements which he claimed to have made, the patent was rendered valueless to plaintiff, and such representations were made for the very purpose of discouraging plaintiff and to induce him to abandon his contract, such conduct on the part of defendant was wholly inconsistent with his right to claim a forfeiture and amounted to a waiver of any right to a forfeiture of plaintiff's rights as a co-owner of the patent.

3. See 12 **Cal. Jur.** 633; 6 **R. C. L.** 906.

4. See 12 **Cal. Jur.** 641.

6. See 6 **Cal. Jur.** 458; 20 **Cal. Jur.** 870; 6 **R. C. L.** 1024.

[7] ID.—DECEIT—EXPERT OPINIONS—ACTIONABLE REPRESENTATIONS.—
While it is true, generally speaking, that in an action for deceit
the representation must be of a fact, as distinguished from a mere
matter of opinion, which ordinarily is not presumed to deceive or
to mislead, when defendant, the inventor, while sedulously con-
cealing from plaintiff the nature and attributes of the asserted im-
provements which he claimed to have made, positively asserted to
plaintiff as a fact that the patent was rendered valueless to plain-
tiff by reason of the improvements made by defendant, such as-
sertion was not the mere expression of an opinion, but was the
representation of a material fact.

[8] ID.—SUPERIOR KNOWLEDGE—FALSE OPINIONS.—When one of the
parties possesses, or assumes to possess, superior knowledge or
special information regarding the subject matter of the repre-
sentation, and the other party is so situated that he may reason-
ably rely upon such supposed superior knowledge or special in-
formation, a representation made by the party possessing or
assuming to possess such knowledge or information, though it
be regarded as but the expression of an opinion if made by any
other person, is not excused if it be false.

[9] ID.—RESCISSION—SUFFICIENCY OF OFFER TO PAY.—Where a plain-
tiff comes into a court of equity asking for the rescission in
whole or in part of a contract, or to be relieved of a portion
of a contract, and the taking of an account is necessary for the
ascertainment of the sum to be paid, or the sum is to be liquidated
by an adjudication based on evidence of facts independent of the
terms of the contract itself, an offer to refund or pay such sum
as shall be decreed is a sufficient offer to do equity; and the
plaintiff is not required to make an actual tender of such amount
before commencing his action.

[10] ID.—OFFER TO PAY—PLEADING—EVIDENCE—FINDINGS—JUDGMENT.
In this action for the rescission of the agreement whereby plain-
tiff reassigned to defendant his one-half interest in a certain auto-
mobile windshield improvement and the patent thereon, the
allegation by plaintiff that he was "ready, willing and able to per-

---

7. What amounts to false representation of existing fact, notes,
18 Am. St. Rep. 555; 1 Ann. Cas. 980. See, also, 12 Cal. Jur. 724; 12
R. C. L. 247.

8. Necessity for reliance on false representations in order to
maintain action for deceit, note, Ann. Cas. 1915B, 779. See, also, 12
Cal. Jur. 750; 12 R. C. L. 352, 359.

Right to rely upon representations to effect contract in re-
gard to patents as basis for charge of fraud, note, 37 L. R. A. 613.

9. Duty to place other party *in statu quo* on rescission of con-
tract, note, 30 L. R. A. 44. See, also, 4 Cal. Jur. 764; 6 Cal. Jur.
387; 4 R. C. L. 511; 6 R. C. L. 936.

form all the terms and conditions" of his original agreement whereby he obtained from defendant a one-half interest in such article, in the absence of a special demurrer, was the equivalent of a formal offer to refund such sum, if any, as might be decreed to be due from plaintiff after an accounting; but, even if the complaint was defective because of the absence of such formal offer, that did not constitute reversible error, where the evidence established and the court found that there was no balance due from plaintiff to defendant, but that, on the contrary, a net balance was due to plaintiff.

(1) 39 Cyc., p. 545. (2) 30 Cyc., p. 964. (3) 21 C. J., p. 100, sec. 76; 30 Cyc., p. 951. (4) 21 C. J., p. 104, sec. 80; 40 Cyc., p. 265. (5) 40 Cyc., p. 265. (6) 40 Cyc., p. 265. (7) 26 C. J., p. 1080, sec. 20, p. 1086, sec. 23. (8) 26 C. J., p. 1085, sec. 22. (9) 4 C. J., p. 928, sec. 2901; 9 C. J., p. 1214, sec. 105. (10) 9 C. J., p. 1241, sec. 169.

APPEAL from a judgment of the Superior Court of Los Angeles County. Paul J. McCormick, Judge. Affirmed.

The facts are stated in the opinion of the court.

James E. Kelby and Kemp & Clewett for Appellant.

W. C. Shelton for Respondent.

FINLAYSON, P. J.—This is an action to cancel an assignment of plaintiff's interest in a patent and to compel defendant to account for the profits gained by him by reason of the assignment. The gravamen of the action is fraud on the part of defendant, by reason whereof plaintiff was induced to execute the assignment. Judgment passed for plaintiff and defendant appeals.

The facts as found by the trial court in response to issues tendered by the pleadings are substantially these: Plaintiff and defendant were friends and neighbors residing in the city of Los Angeles. On July 18, 1917, the parties executed a written agreement, the embodiment of a similar oral agreement previously entered into by them on June 1, 1917. The written agreement, after reciting that defendant is the inventor of an automobile windshield improvement, that he desires to make application to the United States government for letters patent and that both parties desire to exploit the invention to the best possible advantage, sets forth, among

other covenants, the following: (1) Plaintiff agrees to bear
the expense of securing the patent, to pay to defendant the
sum of $250 after the patent shall have been issued, to bear
the expense of putting the invention on the market and to
sell a minimum number of twenty-five sets of windshields
per month; (2) defendant agrees to transfer to plaintiff an
undivided one-half interest in the invention and in the let-
ters patent to be obtained therefor; (3) in case plaintiff, for
any reason, should fail to manufacture and sell a minimum
of twenty-five sets per month, he is to reassign his undivided
one-half interest to defendant on demand, such demand not
to be made prior to one year from the date of the contract.

On June 14, 1917, the parties, pursuant to their oral agree-
ment, made application for letters patent in defendant's
name, the cost whereof was paid by plaintiff as he had un-
dertaken to do. On June 17, 1917, defendant, pursuant to
his agreement, transferred to plaintiff an undivided one-half
interest in the invention. On November 12, 1918, a United
States patent was issued to plaintiff and defendant jointly.

Subsequently to the application for letters patent but prior
to the issuance thereof plaintiff requested defendant to sup-
ply him with samples of the device so that he could exploit
the invention and put it upon the market pursuant to his
agreement. Defendant not only refused to comply with this
request, but told plaintiff that he did not want the latter to
exploit the patent or to sell any of the patented devices
until letters patent should be issued. Plaintiff, in compli-
ance with this expressed wish on the part of defendant, made
no effort to exploit the invention or to manufacture or sell
any of the devices. Thereafter, but prior to the issuance
of the letters patent, defendant told plaintiff that the patent
applied for would be of no value to plaintiff for the reason
that the former had perfected certain improvements upon
the device and that such improvements belonged solely to
him. The nature of these asserted improvements was not
disclosed to plaintiff. Defendant's statements that the patent
applied for would be rendered valueless to plaintiff by reason
of the defendant's improvements upon the device were false
and fraudulent were known by defendant to be false and
were made for the purpose of discouraging plaintiff and to
induce him to abandon his contract, to the end that defend-
ant could thus obtain the entire control of the patent and

procure a reassignment to him of plaintiff's undivided half interest for a nominal consideration. Plaintiff, believing defendant's statements and relying thereon, was induced thereby to fail to advance the final payment for the patent, amounting to $20, and also was induced to refrain from further attempting to carry out the terms of his agreement.

Again, on January 11, 1919, the date of the assignment which plaintiff is seeking to have canceled by this suit, and on several occasions prior to such assignment, defendant, for the purpose of misleading and defrauding plaintiff and to induce him to assign his interest in the patent for a nominal consideration, reiterated his statements to plaintiff that he (defendant) had perfected certain improvements upon the patented device, the nature of which he refused to disclose, and that by reason thereof the patent was rendered valueless to plaintiff, and that he (plaintiff) would lose all he had invested in the patent unless he sold and assigned his undivided one-half interest therein to defendant. These statements that the improvements would render the patent valueless to plaintiff, like those previously made by defendant, were false, were known by defendant to be false, and were made at a time when defendant was actually negotiating with third parties for the payment to him of substantial and profitable royalties in return for licenses to manufacture and sell the patented article. Plaintiff had no knowledge of these negotiations, and the fact that they were pending was fraudulently concealed from him by defendant. By reason of this concealment and of defendant's false and fraudulent statements that the improvements upon the patented device would render the patent valueless to plaintiff, the latter, on January 11, 1919, for the nominal consideration of $100, was induced to and did assign to defendant all of his half interest in and to the invention and in and to the letters patent. Thereafter defendant caused a reissue of the letters patent to be made to him by the government. Since then defendant has transferred to the third parties with whom he previously had carried on negotiations the exclusive right to manufacture and sell the patented device within the territory of the United States, and has received therefor royalties aggregating $7,708.70.

Before commencing this action plaintiff tendered to defendant $100, the amount which defendant had paid to plain-

tiff at the time of the latter's assignment of his interest in
and to the patent. At the same time plaintiff demanded
rescission and a cancellation of his assignment to defendant.

By its judgment the court decreed: (1) That plaintiff's
assignment of his one-half interest to defendant be rescinded;
(2) That defendant holds an undivided one-half interest in
and to the reissued patent in trust for plaintiff; (3) that
within ten days defendant, by proper assignment, convey to
plaintiff such undivided one-half interest, and that upon his
failure so to do the clerk of the court execute such convey-
ance; (4) that defendant holds in trust for plaintiff an un-
divided one-half interest in and to the royalty contracts made
by defendant; and (5) that plaintiff have judgment against
defendant for $1,849.35, with interest. The last-mentioned
sum is one-half of the royalties received by defendant from
his licensees, less the amounts which plaintiff had obligated
himself to pay when he entered into his original agreement
with defendant. The net sum so awarded to plaintiff was
the result of an accounting taken by the court whereby the
respective equities of the parties were adjusted.

In addition to the findings already mentioned, the trial
court found that the written agreement of July 18, 1917,
was a partnership agreement for the joint exploitation of
the patent. Both parties to this appeal seem to assume that
this finding of a partnership constitutes the sole basis for
plaintiff's right to compel defendant to account for the roy-
alties received by him from the licensees to whom he had
granted, after the reissue to him of letters patent, the ex-
clusive right to manufacture and sell the patented device in'
the United States.

The grounds of the appeal are: (1) That a partnership
relation was not created by the original parol agreement nor
by the written agreement of July 18, 1917; that, therefore,
the finding of a partnership is not supported by the evi-
dence; and that if there be no partnership plaintiff is not
entitled to any part of the royalties received by defendant
from the licensees; (2) that plaintiff is not entitled to any
relief whatever because: (a) he did not fully perform either
his oral agreement of June 1, 1917, or his written agreement
of July 18, 1917, and therefore defendant was entitled as
of right to a reassignment of plaintiff's interest in the
patent; (b) defendant's representation that the patent was

rendered valueless to plaintiff was the statement of an opinion and not the misrepresentation of a fact; (c) plaintiff's tender of $100 at the time he demanded a rescission was not a sufficient offer to restore the *status quo.*

As we view the case it is immaterial whether the joint venture created by the original oral agreement or by the written agreement of July 18, 1917, did or did not amount to a partnership, and it therefore is of no consequence whether the evidence does or does not support the finding of a partnership. In either case respondent would be entitled to one-half of the royalties received by appellant, less the credits allowed the latter by the court's decree. [1] It is a familiar principle that when a fraudulent vendee has conveyed the property, or any interest therein, to a third party, who, by reason of his innocence, acquires a good and valid title as against the equity of the original vendor, the latter has a remedy against the substituted property, which in this case is that part of the royalties received by appellant as the result of his transfer to the licensees of respondent's individual right in and to the monopoly created by the patent.

[2] Appellant claims that the principle last announced is inapplicable where, as here, a patent right is the subject matter of the transfer of the fraudulent vendee. The case chiefly relied upon by appellant to support this claim is *Blackledge* v. *Weir & Craig Mfg. Co.,* 108 Fed. 71 [47 C. C. A. 212]. The facts pleaded by the plaintiff in that case showed that the defendant, a co-owner of letters patent, did no more than transfer to licensees its own separate right in the patent as a co-owner thereof. It is true that the declaration which was in assumpsit, alleged that the defendant, at Chicago and elsewhere throughout the United States, had by itself "exercised the exclusive rights of both owners" by granting licenses, shop rights, and other rights under the latters patent. But it was held that under the facts there alleged it was not possible that defendant could have exercised the rights of both co-owners—for which reason it was held that the defendant was not accountable to its co-owner for any part of the profits received by it. There the defendant, unlike the defendant in this case, had not clothed itself with the apparent lawful title to the entire patent; and the defendant's licensees, so it would seem,

knew that their licensor was only a part owner of the patent. It was evidently in view of this knowledge on the part of the licensees that the federal court, in sustaining a general demurrer to the declaration, said: "Knowing the law, the parties to the contract [i. e., the defendant and its licensees] knew that the stipulated grant could confer upon the licensees only the right of the licensor—that is to say, the right to make, use and vend the patented article—but not an exclusive right, because the other patentees might confer upon rival manufacturers or dealers equal privileges under the patent. This being so it is to be presumed that the price agreed to be paid for the individual license, which left the other patentees free to use and to license others to use the invention, was less than would have been paid for a license from all of the patentees. . . . The separate action of any one owner or of his licensees can be an exercise or use only of his individual right, which, though exclusive of all besides, is not exclusive of the other patentees, their assignees or licensees. On principle, therefore, there can be no accountability on the part of a part owner of an invention to other owners for profits made by the exercise of his *individual* right, whether it be by engaging in the manufacture and sale, or by granting to others licenses, or by assigning interests in the patent. His use of the invention in any lawful way is not an appropriation of anything which belongs to another. *The separate rights of the other owners remain unaffected.* They are equally free to use the invention in all legitimate ways for their individual profit. . . . It follows that the charge in the declaration that the defendant 'has by itself exercised the exclusive rights granted to both the plaintiff and defendant' is not true." (Italics ours.) Between that case and this there is a wide gulf. In the present case appellant, by his fraudulent conduct, caused himself to be vested with all the *indicia* of title to the patent as the sole and exclusive owner thereof and of all the monopoly created thereby. As the result of his fraudulent conduct in procuring the assignment from respondent, appellant was able to and did procure the reissue of letters patent to himself as the sole patentee. Having thus wrongfully garbed himself with the apparent title to the patent as the sole owner of all of the monopolistic rights created thereby, appellant granted to innocent licensees the exclusive right to

manufacture and sell the patented device throughout the United States—granting to one the *exclusive* right to manufacture and sell in all the territory east of the Mississippi River, and to another a similar right to manufacture and sell west of the Mississippi River. As innocent licensees for value, the parties from whom appellant received the royalties may successfully contest any right which respondent may assert to manufacture or sell the patented device in any part of the United States. It thus will be seen that appellant, by his fraudulent conduct, has completely destroyed respondent's right as a co-owner of the letters patent. It follows, therefore, that the mere cancellation of the assignment which respondent executed to appellant, or even a reassignment by appellant of an undivided one-half interest in the patent, would be but the shadow of a victory for respondent; and unless appellant can be made to account to respondent for the latter's share of all royalties paid or agreed to be paid by the licensees, respondent, to all practical intents and purposes, will be remediless. Throughout the opinion in *Blackledge* v. *Weir & Craig Mfg. Co., supra,* there runs the implication that one wronged as was this respondent is entitled to an accounting. Thus in the concluding sentence of its opinion the court in that case says: " . . . It is not alleged that the defendant has intentionally and wrongfully so exercised its individual right under the patent as to destroy the value of equal right possessed by the plaintiff." This language implies that if the defendant in that case had intentionally and wrongfully destroyed the value of the equal right possessed by its co-owner, the latter would have been entitled to his share of the royalties and to an accounting therefor.

Our conclusion on this branch of the appeal is that appellant, by granting exclusive rights to innocent licensees at a time when he was the apparent owner of all the monoply created by the reissued letters patent, undertook to and did exercise not only his own individual right as a co-owner but also the individual right which, in equity, belonged to respondent as a co-owner, and that, therefore, appellant was properly held accountable for the profits which accrued to him by his wrongful exercise of respondent's right.

[3] Appellant's next claim is that, irrespective of the fraud practiced by him upon respondent to induce the latter

to execute the assignment, he was in any event rightfully entitled to such assignment by reason of respondent's failure to perform his agreement to manufacture and sell a minimum of twenty-five sets of windshields per month. We can perceive no merit in this claim. The provision in the contract whereby respondent agreed that if for any reason he should fail to sell a minimum of twenty-five sets of windshields per month he would "reassign his undivided one-half interest in said invention and in said patent . . . on demand . . . said demand not to be made prior to a year from the date of this contract," partakes of the nature of an agreement for forfeiture. It contemplates a loss of respondent's rights under the contract and a loss of his right in and to the patent should he fail to sell the stipulated number of windshields during the year following the execution of the contract. The only purpose which could be served by a formal written reassignment, in the event that respondent should so lose his rights, is that by such formal reassignment appellant could be furnished with written evidence that he had become reinvested with respondent's title as the result of the forfeiture of the latter's rights. **[4]** But forfeitures are not favored in the law; and any inconsistent acts or dealings by the party claiming a forfeiture will be regarded as a waiver thereof. To constitute a waiver there need not be a new agreement nor a valuable consideration. (*Viele* v. *Germania Ins. Co.,* 26 Iowa, 9 [96 Am. Dec. 83]; *Roblee* v. *Masonic Life Assn.,* 38 Misc. Rep. 481 [77 N. Y. Supp. 1098].) A simple voluntary relinquishment of a right with knowledge of all the facts—an expression of intention, by speech or conduct, not to demand a certain thing—is sufficient to constitute such a waiver.

**[5]** Here the facts found by the court show conclusively that, by his speech and conduct, appellant waived the forfeiture and therefore his right to a reassignment. The year within which respondent was to sell the minimum number of windshields did not expire until July 18, 1918. The patent did not issue until November 12, 1918, or almost four months after the expiration of the year within which respondent was to put the windshields on the market. As we have stated, the court found that shortly after the execution of the contract of July 18, 1917, appellant, when requested to furnish respondent with the necessary samples wherewith to

put the invention on the market, replied that he (appellant) did not want respondent to sell any of the patented articles until after the issuance of the letters patent. This alone was a waiver of appellant's right to a forfeiture. **[6]** But more than this, appellant, as we have seen, falsely represented to respondent, prior to the issuance of the patent, that by reason of certain improvements which he claimed to have made the patent was rendered valueless to respondent. This representation was made for the very purpose of discouraging respondent and to induce him to abandon his contract. Such conduct on the part of appellant was wholly inconsistent with his right to claim a forfeiture, and unquestionably amounted to a waiver of any right to a forfeiture of respondent's rights as a co-owner of the patent. And even if the provision for a reassignment to appellant did not amount to a covenant for a forfeiture, respondent nevertheless would be excused from performance by that provision of section 1511 of our Civil Code, which reads: ''The want of performance of an obligation, or of an offer of performance, in whole or in part, or any delay therein, is excused by the following causes, to the extent to which they operate: . . . 3. When the debtor is induced not to make it, by any act of the creditor intended or naturally tending to have that effect, done at or before the time at which such performance or offer may be made, and not rescinded before that time.''

**[7]** Appellant's positive assertion as a fact that the patent was rendered valueless to respondent by reason of the improvements made by the former was not the mere expression of an opinion but was the representation of a material fact. It is, of course, generally speaking, true that in an action for deceit the representation must be of a fact as distinguished from a mere matter of opinion, which ordinarily is not presumed to deceive or to mislead. But to this general rule there are many qualifications and modifications which are as important as the rule itself. **[8]** Thus when one of the parties possesses, or assumes to possess, superior knowledge or special information regarding the subject matter of the representation, and the other party is so situated that he may reasonably rely upon such supposed superior knowledge or special information, a representation made by the party possessing or assuming to possess such

knowledge or information, though it might be regarded as
but the expression of an opinion if made by any other per-
son, is not excused if it be false. (*Palladine* v. *Imperial
Valley Farm Lands Assn.*, 65 Cal. App. 727 [225 Pac. 291];
*McDonald* v. *Smith*, 139 Mich. 211 [102 N. W. 668]; *Grim*
v. *Byrd*, 32 Gratt. (Va.), 293; *Turk* v. *Botsford*, 70 Or. 198
[139 Pac. 925]; *White* v. *Peters* (Tex. Civ. App), 185 S. W.
659; *Allen* v. *Hart*, 72 Ill 104; *Benolkin* v. *Guthrie*, 111
Wis. 554 [87 N. W. 466]; *Schoefield Gear & Pulley Co.* v.
*Schoefield*, 71 Conn. 1 [40 Atl. 1046]; *Wilson* v. *Nichols*,
72 Conn. 173 [43 Atl. 1052].) "A matter of opinion may
amount to an affirmation of fact, when the parties are not
dealing upon equal terms and one of them has, or is pre-
sumed to have, means of information not equally open to
the other." (*Boelk* v. *Nolan*, 56 Or. 229, 237 [107 Pac.
689, 691].) As was aptly said by Judge Hand in *Vulcan
Metals Co.* v. *Simmons Mfg. Co.*, 248 Fed. 853 [161 C. C. A.
7], "we should treat very differently the expressed opinion
of a chemist to a layman about the properties of a compo-
sition from the same opinion between chemist and chemist."
It has been said by an eminent jurist: "It is material to
observe that it is often fallaciously assumed that a statement
of opinion cannot involve the statement of a fact. . . . If
the facts are not equally known to both sides, then a state-
ment of opinion by the one who knows the facts best involves
very often a statement of a material fact, for he impliedly
states that he knows facts which justify his opinion." (Lord
Bowen in *Smith* v. *Land etc. Corp.*, 28 L. R. Ch. Div. 15.)
*Schoefield Gear etc. Co.* v. *Schoefield, supra,* was an action
against the fraudulent vendor of a patented article who had
falsely represented to the vendee that there was a large de-
mand for the article and that he had found the making of
it "a good and profitable business." There the court said:
"Whatever opinion he [the fraudulent vendor] communi-
cates is so blended with the statement of the facts upon
which it arises that it becomes itself a statement of fact.
He could best tell whether his business was profitable, and
his invention in demand, and these were points on which
the execution of the contract turned. Opinions might differ
as to what measure of profit might make a business profitable,
or how many orders might suffice to constitute a large demand,
but the conclusion arrived at was one as to the existence of

a state of facts, and certainly 'related to matters of fact of which the defendant had knowledge.' ''

Appellant, when he stated that the patent was rendered valueless to respondent by reason of the improvements, possessed means of information not accessible to his vendor. He knew, but respondent did not know, the nature of the improvements. Indeed, the improvements, whatever they may have been, their nature and their attributes, were sedulously concealed by appellant from respondent. Under these circumstances appellant's statement that his improvements upon the patented device rendered the patent valueless to respondent was not the expression of mere opinion and surmise not based on knowledge, but was the positive assertion of a fact claimed to be based on an intimate knowledge of facts from which an inerrant conclusion could be deduced with certainty. That appellant was fully cognizant of the falsity of his representation that his improvements would render the patent valueless to respondent is conclusively shown by the circumstance that at the very time when he was making the representation he was successfully negotiationg with third parties for the payment to him of valuable royalties in exchange for the right to manufacture and sell the patented device. The foregoing authorities and sound principle justify our holding the representation to be actionable.

[9] As his final point appellant urges that to entitle respondent to rescission and to a cancellation of his assignment it was not sufficient merely to make tender of the amount which was actually paid to respondent at the time when the assignment was fraudulently procured, namely, the sum of $100, but that it was necessary that respondent, before bringing his action, should also make tender of the several amounts which were payable by him under the terms of the original agreement, i. e., the sum of $20—the final payment due to the government upon the issuance of the letters patent—the sum of $250—the amount which respondent had agreed to pay appellant after the patent should be granted—and a sum equal to the total expense of putting the invention upon the market the amount whereof, as found by the court, was $1,150. In other words, it is argued that to restore the *status quo* it was not sufficient to tender the $100 and *revive* respondent's obligations under the original agree-

ment, but that it was necessary for respondent to offer to *perform* those obligations.

Without doubt, the party seeking to rescind a contract and to obtain a retransfer of property must, ordinarily, place or offer to place the other party in the same position he would have occupied if the contract or transfer had not been made. There are, however, exceptions to this rule of restoration. One is that a person attempting to rescind a transaction upon the ground of fraud is not required to offer to restore that which, in any event, he would be entitled to retain. (*Richards* v. *Fraser*, 122 Cal. 456, 461 [55 Pac. 246; *Gatje* v. *Armstrong*, 145 Cal. 370, 374 [78 Pac. 872] ; *Matteson* v. *Wagoner*, 147 Cal. 739, 740 [82 Pac. 436].) Another exception recognized by the courts is where the taking of an account is necessary for the ascertainment of the sum to be repaid. "Where a plaintiff comes into a court of equity asking for the rescission in whole or in part of a contract, or to be relieved of a portion of a contract, and the taking of an account is necessary for the ascertainment of the sum to be paid, or the sum is to be liquidated by an adjudication based on evidence of facts independent of the terms of the contract itself, an offer to refund such sum as shall be decreed is a sufficient offer to do equity. In such case the plaintiff cannot determine, in advance of the suit, the amount by him to be repaid, and is not required to make an actual tender of such amount before commencing his action." (*Sutter St. R. R. Co.* v. *Baum*, 66 Cal. 52 [4 Pac. 916]. See, also, *California etc. Co.* v. *Schiappa-Pietra*, 151 Cal. 740 [91 Pac. 593], and *Billings* v. *Aspen Min. etc. Co.*, 51 Fed. 338 [ 2 C. C. A. 252].)

The case at bar comes clearly within this statement of the rule. **[10]** While it is true that respondent's complaint does not contain a formal offer to refund such sum, if any, as the court might decree to be due from him after the taking of the account, he nevertheless does allege that he is "ready, willing and able to perform all the terms and conditions" of his original agreement. In the absence of a special demurrer, this allegation of willingness and ability to pay must be taken as the equivalent of a formal offer to refund such sum, if any, as might be decreed to be due from respondent after an accounting. In view of this allegation and the facts as found by the court—facts which establish

beyond peradventure that there is no balance to be paid by respondent, but that, on the contrary, a net balance is due to him—a gross miscarriage of justice would result if the judgment should be reversed merely because the complaint does not contain a formal offer to pay any balance which might be found to be due from respondent after the taking of the account demanded by him in his complaint.

The judgment is affirmed.

Works, J., and Craig, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 7, 1924.