[Civ. No. 221.  Fourth Appellate District.—June 7, 1930.]

JAMES M. RUSSELL, Respondent, v. DAVID L. ROSCOE, Appellant.

Crouch & Sanders for Appellant.

Luce & Swing for Respondent.

CARY, P. J.—At the times under consideration here plaintiff was an inventor and the owner of a patent on a parachute. Defendant owned an interest in the Melrose Confectionery Company. Plaintiff, lacking both the business experience and the means to place his invention on the market, met defendant, who undertook, in consideration of receiving an interest in the patent, to find a party who could supply the experience and the means for marketing the same. The agreements between plaintiff and defendant include a total of six contracts. In due course these contracts produced two lawsuits, which were consolidated for trial purposes, resulted in judgments for plaintiff, are here presented on a single record and are now to be considered.

The plaintiff in the first action seeks cancellation of three contracts on the ground of failure of consideration. Contract No. 1, dated September 23, 1925, provides that plaintiff is to assign his interest in the patent to a corporation thereafter to be organized, provides for the division of the stock among the parties, that plaintiff is to devote all of his time to the interests of the corporation and that defendant and one Browne (the latter not being involved in this appeal), are to deposit $10,000 in a bank within forty

days, to cover expenses of incorporation, etc. Contract No. 2, dated October 5, 1925, refers to contract No. 1 and specifies with greater particularity the amount of stock each was to receive in the new corporation. Contract No. 3, dated October 29, 1925, likewise refers to No. 1 and states that since a new and better plan for the exploitation of the parachute has been proposed by defendant he is released from that part of contract No. 1 which required him to put up money for incorporation expenses, and further provides that if plaintiff enters into any contract concerning the patented parachute with parties procured through defendant, plaintiff is to assign to defendant one-third of all "emoluments" which plaintiff might receive therefrom. The plaintiff alleges in substance that nothing called for in any of the contracts had been performed by any of the parties, and that plaintiff had received no consideration for executing them. The second count in action No. 1 asks that plaintiff's title in the patent be quieted. The findings follow the allegations of the complaint and the judgment canceled the contracts and quieted plaintiff's title in the patent.

The sole point urged is that the findings are not supported by the evidence.

Appellant admits that he has no objection to the cancellation of contracts Nos. 1 and 2, but urges that No. 3, which provides that if plaintiff enters into any contract with parties procured through defendant, plaintiff is to assign to defendant one-third of all "emoluments" received therefrom, should not have been canceled since the evidence shows that defendant had, at the time of trial, already interested one McClintock in the parachute, and that plaintiff was receiving "emoluments" as the result. We have carefully reviewed the record on this point and find that appellant's contention cannot be sustained. While McClintock, the man now engaged in financing plaintiff's parachute, was introduced to plaintiff by defendant, yet it clearly appears that the parachute now being manufactured by McClintock is not the one referred to in contracts Nos. 1, 2 and 3.

■ The complaint in the second action seeks cancellation on the grounds of fraud and failure of consideration of the remaining three contracts, which, for the sake of continuity, we will refer to as Nos. 4, 5 and 6. In No. 4, dated October 30, 1925, plaintiff assigns a one-third interest in this same

parachute patent to defendant in exchange for a quarter interest in the Melrose Catering Company, but without recourse against defendant for any indebtedness of that company. Contract No. 5, also dated October 30, 1925, provides that if the ''option'' (apparently referring to contract No. 1) be exercised, then the interests exchanged under contract No. 4 are to be reconveyed to their original owners, that if plaintiff enters into any contract regarding this patent with any person obtained by defendant, defendant is to receive an additional one-third interest in the patent and that if the ''option'' is not exercised and a contract is entered into by plaintiff with some other person, then contract No. 4 is to be modified in that defendant is to receive a half, rather than a third interest in the patent. Contract No. 6, dated November 19, 1925, transfers to defendant a two-thirds interest in the patent, and to plaintiff a quarter interest in the Melrose Company, the latter interest being received by Russell ''in its present status of assets and liabilities as shown by the books and accounts of said business, without recourse against Roscoe.'' The plaintiff alleges in substance that, to induce him to sign contracts Nos. 4, 5 and 6, defendant represented that he was the owner of a quarter interest in the Melrose Company, that this interest was worth $12,000 and that the contracts set forth above would transfer this interest to plaintiff, all of which was false. He further alleges a previous demand for the rescission of the contracts and defendant's refusal. It may be observed in passing, that all six contracts were prepared by the parties without the aid of an attorney, and that the ambiguities and incongruities which they contain, render a succinct statement of their provisions a matter of some difficulty. A second count asks that plaintiff's title in the patent be quieted. The findings followed the allegations of the complaint and the judgment canceled all three contracts and quieted plaintiff's title to the patent.

The points urged are that there is not sufficient evidence to sustain the findings and that the findings do not support the judgment.

The evidence shows the following: Defendant, who had been the owner of an interest in the Melrose Confectionery Company for some two years, desired to associate someone of broader experience in the catering business. In order to secure someone who possessed such experience he had re-

cently sold a quarter interest in the company to one Conn, but before the latter had had time to get the company on a paying basis his health had compelled him to give up the active management. A Dr. Crabtree, owner of the remaining interest, had been advancing money to keep the ship afloat. The Melrose Company had been losing money at the rate of some $1500 a month for several months, had been in financial straits for the same period, had mortgaged its assets for $6,000 and was apparently headed toward bankruptcy. As expressed by the witness Crabtree, "About that time I considered my quarter interest in the business a liability." Defendant revealed none of these facts to the plaintiff, but instead stated to the plaintiff prior to the transfer that defendant's quarter interest in the Melrose Company was worth about $12,000. Plaintiff made no investigation of the financial status of the company, knew nothing of its condition, was totally inexperienced in matters of business, and relied on defendant's statements. Within a few months after the transfer of the quarter interest to plaintiff, he, for the first time, ascertained the true state of affairs. Conn, Roscoe and Russell, realizing that the situation was desperate, assigned all of their interest to Dr. Crabtree, who was to attempt to sell the business. If successful, he was first to pay himself what he had previously advanced, roughly $18,000, and all overplus was to be divided equally between Conn, Roscoe and Crabtree. It will be noted that Russell was not mentioned in this agreement to divide the overplus. The only sale Crabtree was able to make netted less than the $18,000 the company owed him, so that there was nothing left to divide. Plaintiff at no time received any dividends or other profits from the Melrose Company and at no time received anything of value for his interest in the patent. While practically every statement in the foregoing was disputed by defendant and his witnesses, the duty of resolving the conflict rested upon the trial court and there was sufficient evidence upon which to base the findings of misrepresentation.

Appellant urges, however, that even though there be evidence sufficient to sustain the findings, the facts found do not support the judgment, because any statement by defendant as to value was a mere matter of opinion and thus could not constitute a false representation.

False representations in connection with the purchase and sale of property have been the subject of many decisions in this state and the question as to when a statement may be considered a mere expression of opinion, and when a representation of a fact, has received much consideration.

The circumstances under which the statement is made are very material in determining the category within which it falls. Thus when one of the parties possesses, or assumes to possess, superior knowledge or special information regarding the subject matter of the representation, and the other party is so situated that he may reasonably rely upon such supposed superior knowledge or special information, a representation made by the party possessing, or assuming to possess, such knowledge or information, though it might be regarded as but the expression of an opinion if made by any other person, is not excused if it be false. (*Haserot* v. *Keller,* 67 Cal. App. 659, at 670, 671 [228 Pac. 383]; *Winkler* v. *Jerrue,* 20 Cal. App. 555, at 560 [129 Pac. 804]; *Paledine* v. *Imperial Valley F. L. Assn.,* 65 Cal. App. 727, at 737 [225 Pac. 291]; *Zwart* v. *Landfield,* 93 Cal. App. 328, at 333 [269 Pac. 740]; *Davis* v. *Monte,* 81 Cal. App. 164, at 171 [253 Pac. 352]; *Colt* v. *Freitas,* 76 Cal. App. 278, at 286 [244 Pac. 916].) The facts in the case at bar bring it squarely within the rule thus enunciated. The defendant had been the owner of this candy business for approximately two years and had been active in its management. On the other hand the plaintiff, a young man whose experience in life was limited to that of an engineer and inventor in the air service of the United States army, totally without business experience of any kind, was wholly ignorant of the value of this business in which he received the quarter interest.

It is well settled that where there is any doubt as to whether a representation was intended and understood as a mere expression of opinion or a statement of fact, the question is not one of law, but one of fact for the court or jury. (*Davis* v. *Monte, supra; McKeever* v. *Locke-Paddon Co.,* 58 Cal. App. 51, at 57 [207 Pac. 1040]; *French* v. *Freeman,* 191 Cal. 579, at 585 [217 Pac. 515]; *Dickey* v. *Dunn,* 80 Cal. App. 724, at 727, 728 [252 Pac. 770].) The trial court, in determining the question adversely to defendant's contention, was but following this rule.

██ Defendant urges that the opportunity to ascertain the value of the store was open to the plaintiff and therefore he cannot, by neglecting to investigate, hold the defendant liable for this representation. But it has been expressly held *contra*. (*Faull* v. *Johnson*, 94 Cal. App. 230, at 233 [270 Pac. 993]; *Proctor* v. *Arakelian*, 208 Cal. 82 [208 Pac. 368]; *Dickey* v. *Dunn*, 80 Cal. App. 724, at 727 [252 Pac. 770]; *Teague* v. *Hall*, 171 Cal. 668, at 669–671 [252 Pac. 770].)

Defendant further urges that the provisions of Civil Code, section 1691, have not been complied with in that no notice of intention to rescind was given, nor any offer made to restore to defendant the quarter interest in the Melrose Company prior to beginning the action.

As to the notice of intention to rescind: At least one count in the complaint set forth that such notice had been given. The court found this to be true and the finding is supported by the testimony of the plaintiff.

██ Regarding the failure to offer to restore, there are two reasons why this was unnecessary.

Before this action was instituted plaintiff, at the instance of defendant, had transferred such interest as he might have in the company to Dr. Crabtree. This fact, when coupled with the further fact that Dr. Crabtree was to pay to defendant, rather than to plaintiff, any share of the overplus arising from the sale of the company, obviated the necessity for any offer to restore. The defendant had, by his own act, arranged things so that he would himself receive any returns which the sale of the quarter interest would bring.

Furthermore the trial court held there was a complete failure of consideration, which fact in itself would likewise obviate the necessity of any offer to restore. (*Abney* v. *Belmont Country Club Properties, Inc.*, 100 Cal. App. 12 [279 Pac. 829].)

The judgments in both actions are affirmed.

Marks, J., and Barnard, J., concurred.