**MEDTRONIC INC., and Med Rel, Inc., and Medtronic Puerto Rico, Inc., Appellees,**

v.

**INTERMEDICS, INC., Appellant.**

**Appeal No. 86–647.**

United States Court of Appeals, Federal Circuit.

Aug. 15, 1986.

Roy E. Hofer, Willian, Brinks, Olds, Hofer, Gilson & Lione, Ltd., Chicago, Ill., argued for appellant. With him on the brief were Jerold A. Jacover and Harold V. Johnson.

John F. Lynch, Arnold, White & Durkee, Houston, Tex., argued for appellees. With

him on the brief was Charles H. De La Garza.

Before DAVIS, Circuit Judge, COWEN, Senior Circuit Judge, and NEWMAN, Circuit Judge.

DAVIS, Circuit Judge.

This case, coming from the United States District Court for the Southern District of Texas, concerns two separate patents, one owned by appellee Medtronic, Inc. and its wholly-owned subsidiary Medtronic Puerto Rico, Inc. (collectively called Medtronic), and the other by appellant Intermedics, Inc. (Intermedics). Medtronic's patent was upheld and Intermedics' was ruled invalid. Intermedics is the only appellant. Medtronic's patent (which was upheld and found infringed) is U.S. Patent No. 3,902,-501 (the C/D patent).[1] It was considered (and held not invalid) in this court's recent decision in *Medtronic, Inc. v. Daig Corporation,* 789 F.2d 903 (Fed.Cir.1986), *reh'g denied,* No. 85-2645 (July 1, 1986). Intermedics' patent is U.S. Reissue Patent No. 30,366[2] (the R/S patent) held invalid by the District Court under 35 U.S.C. § 103, and not infringed by Medtronic. We affirm.

## I. Background

### A. *The Inventions*

The case relates, as did *Medtronic v. Daig, supra,* to pacemaker leads which comprise an electrode tip at one end for electrically connecting the heart to a pulse generator. The entire system of lead, generator and a power source is called a "pacemaker." In use, electrical impulses cause the heart to beat, thus restoring an acceptable heart rate to a patient whose heart rate is too low or erratic.

The two major types of pacemaker leads are the endocardial lead and the epicardial (myocardial) lead. The epicardial lead is affixed to the outside tissue of the heart.

1. U.S. Patent No. 3,902,501 issued to Paul Citron and Eugene A. Dickhudt on September 2, 1975 and was assigned to Medtronic.

2. Reissue Patent No. 30,366 reissued to Ned S. Rasor and Joseph W. Spickler, the inventors named in the original patent, U.S. patent No. 3,835,864, which issued on September 17, 1974.

Such fixation requires a major surgical procedure and is disadvantageous because of attendant trauma to the patient, extended recuperation time, as well as the risks associated with major surgery.

Endocardial leads are inserted inside the heart through a vein. These leads alleviate the problems accompanying epicardial leads because implantation inside the heart involves a relatively non-traumatic surgical procedure under local anesthesia.

Both patents in this suit relate to endocardial leads for transvenous implantation, each having a pacing electrode at its distal tip. The lead of the C/D patent comprises soft, pliant tines near the electrode tip which entangle or cooperate in the string-like "trabeculae"[3] of the heart's interior, thus providing a means of passively fixing the electrode to the heart.[4] The C/D patent teaches that its tined leads address the dislodgment problem of prior art leads while minimizing trauma and preserving acute repositionability.

The R/S patent provides for an endocardial lead comprising

electrode means ... for contact with a portion of the living body to be stimulated by said electrode means, and means mounted to project outwardly of and peripherally of said body form including anchor portions locating in a position displaced from said electrode means and providing means for engaging in portions of said living body to establish said electrode means in a required position of use....

R/S patent, Claim 1, Column 11, lines 13–21. The R/S patent discloses an active fixation using wires or barbs to hook into the heart muscle.[5] Among the objects advanced in the R/S patent was the attachment of an endocardial lead in a region spaced away from the region of stimulation to avoid the adverse effects of tissue fibrosis.[6]

B. *District Court proceedings*

Medtronic initiated this action on November 7, 1980 against Intermedics for infringement of the former's C/D patent. Intermedics counterclaimed for infringement by Medtronic of the R/S patent.

The case was tried before a jury. Returning answers to sixteen special interrogatories which sought certain factual answers relating to obviousness, as set forth in *Graham v. John Deere Co.*, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545, 148 USPQ 459 (1966), as well as to infringement, the jury rendered its verdict on August 2, 1983.[7] The jury returned answers to these interrogatories that Medtronic's C/D patented invention would not have been obvious and was infringed by Intermedics and that Intermedics' R/S patent was invalid and not infringed.

Following the verdict, Intermedics moved for a new trial on the C/D patent based on allegedly newly discovered evidence of prior invention, and other grounds. The trial judge, Judge Gibson, denied Intermedics'

---

3. Trabeculae are lattice-like structures or small bundles of muscle fiber in the ventricular apex or the right atrial appendage.

4. Claim 1, involved here, is representative:

1. In an endocardial lead of the type having an electrical conductor encased in a material which is generally inert to body fluids, the conductor terminating at an exposed electrically conductive electrode tip, the improvement which comprises: non-conducting tine means extending from said encasing material and away from said tip from a location adjacent said tip for cooperating with heart tissue, to hold the tip in position, said tine means forming a generally acute angle with said encasing material and being entirely of a pli-

ant material having sufficient rigidity to maintain said angle when said tine means are unrestrained, but sufficiently pliant to prevent penetration of said heart tissue, said pliant material being generally inert to body fluids.

5. *See* Column 3, line 16; Column 5, lines 50–51; and Column 7, lines 55–58 of the R/S patent.

6. Fibrosis relates to the growth of fibrotic or scar tissue and decreases the ability of the heart tissue to be stimulated.

7. The interrogatories covered, *inter alia*, the obviousness of both patented inventions, the commercial success of and need for each patented invention, and the main difference between the prior art and each invention.

new trial motion [8] and entered a judgment of validity and infringement on August 16, 1985. Next, Intermedics moved for a judgment notwithstanding the verdict (JNOV) under Fed.R.Civ.P. 59; this motion challenged the jury's verdicts as to invalidity and infringement of both patents. The motion was denied on October 4, 1985.

Intermedics now argues that the trial judge erroneously adjudged the R/S patent invalid and the C/D patent not proven invalid, and erroneously denied the motion for JNOV on the issue of infringement of the R/S patent. In addition, Intermedics contends that there were prejudicial errors committed during the trial which warrant a new trial on any validity or infringement issue not resolved in its favor.

## II. Validity

In assessing nonobviousness a number of factual inquiries must of course be made: (1) the scope and content of the prior art; (2) the level of ordinary skill in the art; (3) the differences between the claimed invention and the prior art; and (4) objective evidence of secondary considerations such as long felt need, unexpected results or commercial success. *Graham*, 383 U.S. at 17, 86 S.Ct. at 693, 148 USPQ at 467. With respect to both patents, the parties agreed or stipulated the first and second of the factual inquiries set forth in *Graham*. Only issues relating to the third and fourth factual inquiries were submitted for jury decision. *See supra* note 7. On these issues, the jury findings must stand unless they are unsupported by substantial evidence of record. *Structural Rubber Products v. Park Rubber*, 749 F.2d 707, 719, 223

USPQ 1264, 1273 (Fed.Cir.1984); *Railroad Dynamics, Inc. v. A. Stucki Co.*, 727 F.2d 1506, 1512, 220 USPQ 929, 936 (Fed.Cir.), *cert. denied*, 469 U.S. 871, 105 S.Ct. 220, 83 L.Ed.2d 150, 224 USPQ 520 (1984).

### 1. *The C/D patent*

■ On this appeal, Intermedics does not contest the *Graham* factual inquiries stipulated by the parties or decided by the jury; rather, Intermedics disputes only the ultimate conclusion of nonobviousness with respect to claims 1 and 7 of the C/D patent. Obviousness is a question of law. In reviewing a District Court's refusal to grant JNOV, it is the duty of this court to be satisfied that the law has been correctly applied to the facts found. *Structural Rubber Products*, 749 F.2d at 719, 223 USPQ at 1273; *Railroad Dynamics, Inc.*, 727 F.2d at 1512, 220 USPQ at 936.

■ Prior art advanced against the C/D patent included the 1969 Schaldach, et al., reference,[9] and the Rasor/Spickler article.[10] These articles were not before the Patent and Trademark Office (PTO) during the prosecution of the C/D patent. The Schaldach article taught an endocardial lead having pliant metal tines which were adjacent to the electrode tip and which engaged themselves in the trabeculae. The Rasor/Spickler article disclosed an intracardial pacemaker with radiating fingers that were intended to catch in the trabeculae of the ventricle.[11] Neither of these prior art articles expressly taught pliant tines which were made of soft material.

The jury found that the soft pliant tines which did not penetrate tissue and which

8. Judge Gibson held in abeyance his decision on the new trial motion until the evidence concerning the alleged prior invention had been considered by the federal District Court in Minnesota. In August 1985, Judge Earl Larson of the United States District Court for the District of Minnesota held the C/D patent valid and infringed by two other competitors of Medtronic. *Medtronic, Inc. v. Daig Corp.*, 611 F.Supp. 1498, 227 U.S.P.Q. 509 (D.Minn.1985), *affirmed*, 789 F.2d 903, *supra*. Judge Larson rejected as not credible the prior-invention evidence on which Intermedics based its new trial motion.

9. Schaldach, M. & Franke, O., "Technischer Stand und Tendenzen in der Schrittmachertherapie," Mediginal-MarkT/Acta Medicotechnica, Nr. 6 (1969).

10. Spickler, W.J., Rasor, N.S., Kezdi, P., Misra, S.N., Robins, K.E., & LeBouef, C., "Totally Self-Contained Intracardiac Pacemaker," J. Electrocardiology, 3 (3–4) 325–331, (1970).

11. The ventricles are the lower chambers of the heart which receive blood from a corresponding atrium (the upper chambers of the heart) and from which blood is forced into the arteries.

cooperated with the heart constituted the difference between the claims of the C/D patent and the prior art.[12] As Intermedics recognizes, this finding was supported by substantial evidence. Neither Dr. Rasor nor Dr. Spickler could recall specifically what material composed radiating fingers in any of the devices proposed by the R/S article. Testimony ranged from nylon to surgical gut. Dr. Rasor also admitted that he did not promote "soft flexible fingers" in any publication or abstract, or in approaching potential licensees. When asked if he ever proposed the use of soft tines for a lead to the National Heart Institute even as late as 1973, Dr. Rasor testified as follows:

Q: Did you ever make a proposal to them that it would be nice to have soft, flexible fingers?

A: Not in those terms.

Q: All right.

A: And to them—will you specify who you meant?

Q: To anyone.

A: Not in those terms.

Jt.App., Vol. IV, A 1058.

Intermedics argues that the testimony of its expert, Dr. Tyers, established that (1) the radiating finger in the Rasor/Spickler article appeared non-metallic in view of the difference in reflectiveness between the fingers and surrounding metal and (2) that the fingers had to be pliant in order to be inserted into the vein. However, the jury was free to discount this evidence as showing soft or pliant tines, in favor of other credible evidence that Citron and Dickhudt first conceived the invention.

The jury also found that the soft pliant tines of the C/D patent satisfied a long felt need and achieved commercial success.[13] Even though the level of skill in the art was stipulated to be high,[14] we hold that the jury findings and the facts as agreed upon by the parties support the District Court's legal conclusion that the C/D patent was not proven invalid. *See Medtronics, Inc. v. Daig Corp., supra.*

### 2. *The R/S patent*

The District Court found claims 1, 2 and 5 of the R/S patent invalid for obviousness under 35 U.S.C. § 103 over prior art of record. Intermedics challenges this ultimate conclusion of obviousness. Also, Intermedics attacks the jury findings with respect to the secondary considerations of nonobviousness—here, the absence of commercial success, the non-satisfaction of a long felt need—claiming that they were unsupported by substantial evidence.

A prima facie case of obviousness of the R/S patent invention was essentially made by combining two references, the 1968 Parsonnet, et al. article[15] and the 1969 Schaldach, et al. article.[16] Basically, the same prior art was before the PTO. The Parsonnet article taught flanged leads which included a frustoconical flange as a means to catch in the trabeculae and hold the lead in place, and, as such, provided passive fixation remote from the point of stimulation. The Schaldach article taught an endocardial safety pin type lead which had two metal barbs or wire hooks extending outwardly from the electrode tip, and thus provided a fixation means extending outwardly from

---

12. The jury also found expressly that Rasor and Spickler had not made an invention of a lead having soft, pliant tines prior to the C/D invention.

13. Though the absence of objective evidence is a neutral factor, if present it "may often establish that an invention appearing to have been obvious in light of the prior art was not." *Stratoflex, Inc. v. Aeroquip Corp.,* 713 F.2d 1530, 1538, 218 USPQ 871, 879 (Fed.Cir.1983); *see also Kansas Jack, Inc. v. Kuhn,* 719 F.2d 1144, 219 USPQ 857 (Fed.Cir.1983).

14. The "level of skill" as set by stipulation of the parties was a "person having the combination of skill and knowledge of a cardiac surgeon together with the expertise of biomedical engineer having a mechanical or electrical aptitude or engineering degree."

15. Parsonnet, V., Zucker, I.R., Gilbert, L. Rothfeld, E.L., Alpert, J., and Brief, D.K., "Clinical Experience with Implanted Standby Pacemakers," SURGERY, Vol. 63, No. 1, pp. 188–197 (1968).

16. *See supra* note 9.

the body as required by the challenged claims of the R/S patent. Here, again, the stipulated level of skill was high.[17]

The jury found "that the difference between the prior art and the space anchored electrode of the R/S patent was the provision of anchors which projected outwardly from the body of the lead and are spaced from the electrode tip."[18] This finding is not disputed. The prior art references in combination clearly showed that the invention as a whole would have been obvious to one of ordinary skill in the art at the time the invention was made. We take this position especially in light of evidence which showed that Intermedics produced the leads of the R/S patent by engrafting tines on its earlier flanged leads and that it advertised the use of the flange together with the tines to provide "two anchoring mechanisms."[19] We are satisfied that the jury findings, the stipulated facts, and the evidence of record support the District Court's denial of JNOV and conclusion that one skilled in the art would have been led by the prior art to position the anchor means outwardly from the heart and to use the flange of the lead, as disclosed in the R/S patent, to provide a mechanism to anchor the lead remote from the point of stimulation. We also think that the jury's finding of the absence of the satisfaction of a long-felt need was supported by substantial evidence of record.[20]

Further, Intermedics has failed to show that there was no substantial evidence supporting the jury finding of lack of commercial success. Intermedics argues that the R/S patent received at least one million dollars in monetary tribute. But there was no evidence relating this tribute to the amounts of sales of the R/S device or suggesting that any sales were due to the inclusion of the claimed features of the R/S patent. *Pentec, Inc. v. Graphic Controls Corp.*, 776 F.2d 309, 315, 227 USPQ 776, 770 (Fed.Cir.1985) (for a claimed invention's commercial success to be given substantial weight, a nexus must be established between it and the merits of the claimed invention).

### III. Infringement

Intermedics does not challenge, as a matter of law, the finding of its infringement with respect to the C/D patent. However, Intermedics does argue that the jury finding of noninfringement of the R/S patent is not supported by substantial evidence. Because we have concluded that the District Court correctly decided that the R/S patent was invalid for obviousness, we need not and do not decide the issue of infringement. In the succeeding section of this opinion, we do, however, address Intermedics' contentions that the denial of its motions for a new trial and for judgment notwithstanding the verdict (with respect to infringement of the R/S patent), was erroneous.

### IV. New trial and judgment notwithstanding the verdict

#### A. *Denial of new trial motions*

■■■ Errors in judicial rulings or in the conduct of the court warrant a new trial where the error or conduct was prejudicial. 6A J. Moore, Moore's Federal Practice § 59.08(2) (2d ed. 1983). Review of the denial or grant of a motion for new trial is

17. *See supra* note 14.

18. Jury Interrogatory No. 11, at Jt.App., Vol. 1, A 79.

19. *See* Testimony of Anson K. Atkinson, Vice President of Marketing at Intermedics, at Jt. App., Vol. III, A 506–508.

20. Intermedics asserts that its spaced anchor electrode structure satisfied a long felt need for low threshold electrodes. However, there was credible evidence to the contrary. For example, Ken Stokes, an engineer, reviewed the threshold results obtained from a number of different leads and concluded that there is no correlation between point of fixation and thresholds. Jt. App., Vol. III, A 686. Dr. Martin, Intermedics' Executive Vice President also admitted that tined leads do not achieve lower threshold. Jt. App., Vol. II, A 440–42. Other credible evidence established that conventional Medtronic and Cordis flanged endocardial leads, that were available at the time of Spickler's work, were achieving thresholds lower than those publicized by Rasor and Spickler. Jt.App., Vol. V, A 1358–60. (Testimony of Hellard, engineer at Medtronics.)

evaluated under an abuse of discretion standard. *Id.* at § 59.08. Intermedics has asserted two grounds for a new trial: (1) the improper exclusion of evidence, and (2) the giving of erroneous jury instructions.

*Exclusion of Evidence:* The excluded evidence of which Intermedics chiefly complains was the testimony of its patent expert, Professor Gambrell. While Professor Gambrell did testify at trial, a portion of his testimony relating to the explanation and discussion of the prior art, the scope and obviousness of the asserted claims, and the infringement of the asserted claims, was excluded, apparently because Professor Gambrell did not personally have knowledge of the prosecution of the patents in suit but would testify generally about patent law with respect to its application to this case.

■ We do not think that the trial judge abused his discretion in the exclusion of this evidence. Professor Gambrell was qualified as an expert and, as such, was allowed to testify at trial. The trial judge, in his discretion, simply circumscribed the extent of Professor Gambrell's testimony on the basis of the witness's range of expertise with respect to the two patents and the prior art in this suit. Moreover, the exclusion does not appear to be prejudicial since the testimony sought to be introduced was cumulative of testimony already in the record.[21] We also see no abuse of discretion in the trial judge's exclusion of evidence relating to the amount of the settlement offer made by Metronics. "An offer of settlement is not admissible to prove liability." Fed.R.Evid. 408.

■ *Jury Instructions:* The jury was charged that the burden of proving invalidity of a patent was "clear and convincing" unless the jury found the art cited in the litigation to be more pertinent than that cited to the PTO; in that event, the burden was a preponderance of evidence. This instruction was erroneous. 35 U.S.C.

§ 282 creates a presumption that a patent is valid and imposes the burden of proving invalidity on the challenger by "clear and convincing evidence." That burden is permanent and does not change. However, Intermedics did not object to these instructions at trial and cannot now assert error respecting them, absent a showing of "great injustice." *Bio-Rad Laboratories, Inc. v. Nicolet Instrument Corp.*, 739 F.2d 604, 615, 222 USPQ 654, 662 (Fed.Cir.), *cert. denied*, 469 U.S. 1038, 105 S.Ct. 516, 83 L.Ed.2d 405 (1984) (citing *American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1364, 220 USPQ 763, 774 (Fed.Cir.), *cert. denied*, 469 U.S. 821, 105 S.Ct. 95, 83 L.Ed.2d 41 (1984)). *See* Fed.R. Civ.P. 51.

■ There was no "great injustice." With respect to the obviousness of the R/S invention, the most pertinent art was before the PTO; thus, the burden was correctly "clear and convincing."[22] As for the C/D patent, Intermedics failed to prevail on the lower burden of a preponderance of evidence—charged by the District Court—and has plainly failed to show that it would have prevailed under the stronger burden. In these circumstances, there is no harmful error.

■ Regarding infringement, the record shows that Intermedics timely objected to instructions relating to infringement but only on the ground that, under the facts of this case, there was no need to instruct the jury on the matter of equivalency. Claim 1 of the R/S patent calls for a "means" for performing a specified function, *i.e.*, engaging in portions of a living body. Under 35 U.S.C. § 112, ¶ 6, such a claim must be construed in light of the specification to cover the corresponding means structure and "equivalents thereof." It was necessary to instruct the jury on equivalency so that they could properly determine the equivalency of the "means"

---

21. Mr. Gambrell's intended testimony was repetitive of testimony offered by Drs. Rasor, Spickler, Williams and Tyers, and by Messrs. Stokes, Citron and Terry, among others.

22. *See Atlas Powder Co. v. E.I. Dupont de Nemours & Co.*, 750 F.2d 1569, 1573, 224 USPQ 409, 411 (Fed.Cir.1984), and *American Hoist*, 725 F.2d at 1358, 1360, 220 USPQ at 764, 771.

of the R/S patent claims and Medtronics' tine leads. We see no error in these instructions relating to the meaning of equivalent structures. In construing a "means plus function" claim, a number of factors, including the language of the claim, the patent specification, the prosecution history of the patent, other claims in the patent, and expert testimony may be considered. *Palumbo v. Don-Joy Co.*, 762 F.2d 969, 975, 226 USPQ 5, 8 (Fed.Cir.1985) (citing *McGill, Inc. v. John Zink Co.*, 736 F.2d 666, 221 USPQ 945 (Fed.Cir.), *cert. denied*, 469 U.S. 1037, 105 S.Ct. 514, 83 L.Ed.2d 404 (1984)); *SRI International v. Matsushita Electric Corp.*, 775 F.2d 1107, 227 USPQ 577 (Fed.Cir.1985). *See also D.M.I., Inc. v. Deere & Co.*, 755 F.2d 1570, 1574, 225 USPQ 236, 238 (Fed.Cir.1985) (§ 112, ¶ 6 of 35 U.S.C., was written precisely to avoid a holding that a means-plus-function limitation must be read as covering only the means disclosed in the specification).

B. *Denial of Judgment Notwithstanding the Verdict (JNOV)* [23]

■ In considering a motion for JNOV, the District Court must: (1) consider all the evidence; (2) in a light most favorable to the non-mover; (3) drawing reasonable inference favorable to the non-mover; (4) without determining credibility of witnesses; and (5) without substituting its choice for that of the jury between conflicting testimony. *Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 1547, 220 USPQ 193, 197 (Fed.Cir.1983). If the court determines that the evidence and inferences reasonably drawn therefrom, viewed in a light most favorable to the non-moving parties, substantially support the jury verdict, the motion for JNOV should be denied.

■ Intermedics argues that the testimony of its witness, Dr. Tyers, explained how claims 1, 2 and 5 of the R/S patent unequivocally read directly on Medtronics' tined lead and that Medtronics submitted no evidence in rebuttal. In interrogatory No. 2, the jury found that Rasor and Spickler did not invent soft, pliant tines which did not penetrate the heart tissue but cooperated with that tissue to hold the leads in place. There is, as we have already said, substantial support for that finding. The R/S patent disclosed barb-like means for attaching the lead which "tend to imbed themselves within the heart muscle." [24] The patent also stated that "if necessary, some pull could be placed on the lead to complete the attachment." [25] As to that passage, Dr. Martin testified as follows:

Q.: Is that a good idea?

A.: No.

Other parts in the R/S patent specification which permitted the jury to construe the "means" limitations of the R/S claims were "tissue-attaching member," "stainless steel attaching point," and "barbs." [26] There was, in short, substantial evidence for the jury's finding that Medtronics had not infringed the R/S patent (if it is deemed valid).

On the basis of all the evidence, the District Court did not err in its denial of Intermedics' motion for JNOV on the infringement of the R/S patent.

■ Finally, Intermedics contends that the District Court denied the motions for new trial or JNOV without written analysis. In view of the instructions which carefully laid out the verdicts if specific facts were found, and the special interrogatories answered by the jury in returning its verdict, we think that the record clearly delineates the basis for the District Court's decisions. There was no error in the summary denial of the motions.

AFFIRMED.

---

**23.** We have already considered the denial of the JNOV except for Intermedics' claim that Medtronics infringed the R/S patent. Technically it is unnecessary to consider this question because we have held that patent invalid. Nevertheless, we discuss this matter for the purpose of completeness.

**24.** The R/S Patent, col. 9, lines 62–65 and Col. 10, lines 16–20.

**25.** The R/S Patent, col. 10, lines 20–22.

**26.** The R/S Patent col. 3, line 18, col. 4, line 21; and col. 7, line 49, respectively.