848 F.2d 1244
 Unpublished Disposition
NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
The MAGNAVOX COMPANY and Sanders Associates, Inc.,
Appellees/Cross-appellants,
v.
ACTIVISION, INC., Appellant/Cross-appellee.
 Nos. 86-1263, 86-1334.
 United States Court of Appeals, Federal Circuit.
 May 9, 1988.
 
 Before NIES, Circuit Judge, COWEN, Senior Circuit Judge, and PAULINE NEWMAN, Circuit Judge.
 NIES, Circuit Judge.
 
 
 1
 Activision, Inc. appeals from the judgment of the United States District Court for the Northern District of California, No. C-82-5270-CAL (March 13, 1986), holding that Activision failed to sustain its burden of proving invalid the asserted claims of U.S. Patent No. Re. 28,507 ('507 patent), owned by Sanders Associates, Inc. and exclusively licensed to Magnavox Co. (collectively Magnavox), and finding that the use of an Activision cartridge in conjunction with a coacting console directly infringed the asserted claims and that Activision contributed to, and induced infringement of, the asserted claims by manufacturing and selling within the United States eleven unlicensed video game cartridges. Magnavox cross-appeals from the district court's judgment finding that Activision did not willfully infringe the '507 patent and refusing to award increased damages and attorney fees or to grant an injunction against future infringement. We affirm the district court's judgment in all respects.
 
 
 2
 * VALIDITY
 
 
 3
 Contrary to Activision's assertions, we are unpersuaded that the court reached the wrong result by applying an incorrect legal standard or by failing to properly analyze the claims in determining the issue of obviousness of the claimed Rusch invention. The district court set out the differences from the prior art references and found no teaching of certain claim limitations. Activision has failed to convince us that those findings are clearly erroneous. Activision's assertion is meritless that the court failed to consider all of the submitted prior art. Our own review of the prior art teachings convinces us that, as a matter of law, the invention would not have been obvious from Baer or Higinbotham or other references in combination. The references do not teach or suggest the means for performing the functions of the claimed combination of the '507 patent. Conclusory statements by Activision's expert that the invention would have been obvious are entitled to little, if any, consideration and are manifestly insufficient to support the overturn of the court's decision.
 
 
 4
 Because Activision failed to make out a prima facie case of obviousness, we need not consider Activision's arguments that the district court improperly considered the relevant objective evidence of nonobviousness, particularly that the invention of the '507 patent has been commercially successful.
 
 
 5
 Activision has also failed to convince this court that the district court improperly relied upon the two prior decisions of the Northern District Court of Illinois which upheld the Rusch patent. See Magnavox Co. v. Mattel, Inc., 216 USPQ 28 (N.D.Ill.1982); Magnavox Co. v. Chicago Dynamic Indus., 201 USPQ 25 (N.D.Ill.1977). Review of the entire record demonstrates that the district court reached the same conclusions independently of those prior decisions.
 
 
 6
 In sum, we must uphold the district court's judgment that Activision failed to overcome the presumption of validity of the asserted '507 patent claims. Activision has failed to demonstrate that the court's findings underlying its holding on validity are clearly erroneous, that those findings cannot support its legal conclusions on that issue, or that its legal conclusions are incorrect as a matter of law. See Kloster Speedsteel AB v. Crucible Inc., 793 F.2d 1565, 1571, 230 USPQ 81, 84 (Fed.Cir.1986), cert. denied, 107 S.Ct. 882 (1987); Atlas Powder Co. v. E.I. Du Pont de Nemours, 750 F.2d 1569, 1573, 224 USPQ 409, 411 (Fed.Cir.1984).
 
 II
 DIRECT INFRINGEMENT
 
 7
 The district court properly rejected Activision's attempt to narrowly construe the claim elements recited in means-plus-function format to cover only the analog circuitry described in the '507 specification. See Medtronic, Inc. v. Intermedics, Inc., 799 F.2d 734, 741-42, 230 USPQ 641, 645 (Fed.Cir.1986), cert. denied, 107 S.Ct. 882 (1987); D.M.I., Inc. v. Deere & Co., 755 F.2d 1570, 1574, 225 USPQ 236, 238 (Fed.Cir.1985).
 
 
 8
 Activision does not dispute that the words of the means elements read literally on the eleven accused Activision cartridge/console combinations. Its attack focuses on the court's finding that the means to perform the required function in each instance is equivalent to the means of the invention disclosed in the specification. Having considered all of Activision's arguments, we are unpersuaded that the district court's findings are clearly erroneous. In the context of this invention and its prosecution history, a change from analog circuitry to digital circuitry does not effect such a change in the principle of operation of the claimed invention that the accused devices should be found to fall outside the reasonable scope of the claims. Here, we conclude that the patent provided the "road map" for the substitutions. As the district court held, infringement is not avoided here by substituting later-developed technology. See Hughes Aircraft Co. v. United States, 717 F.2d 1351, 1365, 219 USPQ 473, 483 (Fed.Cir.1983); Decca Ltd. v. United States, 544 F.2d 1070, 1080-81, 191 USPQ 439, 447-48 (Ct.Cl.1976).
 
 III
 CONTRIBUTORY INFRINGEMENT
 
 9
 Regarding the district court's finding of contributory infringement, Activision asserts that the issue comes down to the legal question of whether use of Activision cartridges constitutes a permissible repair or adaptation, or an impermissible reconstruction of the patented invention and further asserts that interchanging game cartridges is the former. Thus, even if a console using an Activision cartridge falls under the claims, per Activision, there is no direct infringement and, therefore, can be no contributory infringement.
 
 
 10
 Software Publishers Association, as amicus curiae, also argues that the court found contributory infringement where no direct infringement occurred. Per amicus curiae, the software is not a material part of the invention and, thus, no direct infringement occurs when consumers place any unpatented software into a patented console that consumers purchased from a licensed source.
 
 
 11
 The problem with amicus curiae 's position is its faulty premise that the Atari 2600 console alone is a patented and licensed product. The Rusch patent does not cover the Atari console alone. The console is a staple article of commerce having substantial noninfringing uses. The district court correctly found that the particular game programmed on a cartridge is critical to determining whether the resulting cartridge/console combination is or is not within the scope of the '507 patent claims. Activision is free to sell game cartridges which in conjunction with the console do not infringe. Therefore, we conclude, as did the district court, that the purchase of a console carries with it no implied license to use the console in an infringing manner, i.e., with particular game cartridges that in combination with the console result in an infringement. Cf. Met-Coil Sys. Corp. v. Korners Unlimited, Inc., 803 F.2d 684, 231 USPQ 474 (Fed.Cir.1986).
 
 
 12
 Contrary to Activision's assertions the district court correctly determined that use of Activision cartridges constitutes a reconstruction of Rusch's patented device. Activision's attempt to draw a parallel between the instant case and the Aro decisions is unconvincing. See Aro Mfg. Co. v. Convertible Top Replacement Co., 377 U.S. 476 (1964); Aro Mfg. Co. v. Convertible Top Replacement Co., 365 U.S. 336 (1961). Activision's supplying of nonstaple game cartridges for playing entirely new games goes well beyond permissible replacement of "worn" parts to "repair" a patented device. Rather, we view this case as being more in line with Dawson Chemical Co. v. Rohm & Haas Co., 448 U.S. 176 (1980), and falling within the express language of section 35 U.S.C. Sec. 271(c) (1982). The use of Activision's accused cartridges, like the use of nonstaple propanil in Dawson Chemical, is a recreation of the patented combination constituting an infringement. Activision's variation of this argument, namely that the substitute cartridge is an "accessory" to the patented device, is also rejected. The so-called "accessory" is not merely an addition to the patented invention. The Activision cartridge can be used only by destroying the licensed combination (i.e., the patented invention) and creating a wholly new one.
 
 
 13
 Consequently, the court's determination that Activision was guilty of contributory infringement through manufacture and sale of its eleven accused cartridges must be upheld.*
 
 IV
 REMEDIES
 A. Permanent Injunction
 
 14
 In its cross-appeal Magnavox argues that the district court abused its discretion by denying Magnavox a permanent injunction. As with most discretionary decisions the trial court's refusal to grant Magnavox an injunction was based on certain findings of fact. In this case the court found no evidence of a substantial threat of future infringement or irreparable harm. Having failed to convince this court that those facts are clearly erroneous, we cannot say that the court abused its discretion in denying Magnavox's request to enjoin Activision.
 
 B. Increased Damages
 
 15
 Magnavox argues that the district court clearly erred in not finding that Activision willfully infringed the '507 patent and, therefore, should have awarded Magnavox increased damages under 35 U.S.C. Sec. 284 (1982). Per Magnavox, Activision willfully infringed the '507 patent in view of its failure to obtain an opinion of counsel regarding the issues of validity and infringement after Magnavox notified Activision of infringement and brought the '507 patent to its attention.
 
 
 16
 Under the totality of the circumstances we are satisfied that the district court's finding of no willful infringement was not clearly erroneous. See King Instrument Corp. v. Otari Corp., 767 F.2d 853, 867, 226 USPQ 402, 412 (Fed.Cir.1985), cert. denied, 106 S.Ct. 1197 (1986); Central Soya Co. v. Geo. A. Hormel & Co., 723 F.2d 1573, 1577, 220 USPQ 490, 492 (Fed.Cir.1983). Because the court found no willful infringement, it properly refrained from exercising its discretion and declined to award Magnavox increased damages. See Reactive Metals and Alloys Corp. v. ESM, Inc., 769 F.2d 1578, 1582-83, 226 USPQ 821, 824 (Fed.Cir.1985).
 
 C. Attorney Fees
 
 17
 Magnavox maintains that Activision's willful infringement was sufficient to support a finding that this case is exceptional under 35 U.S.C. Sec. 285 (1982) and, therefore, the district court should have awarded Magnavox attorney fees. It also asserts that Activision's dispute of validity without presenting new prior art is evidence of bad faith litigation which makes this case exceptional.
 
 
 18
 This case is not exceptional because, as discussed above, the district court did not clearly err in finding no willful infringement. Furthermore, the mere fact that another defendant raised invalidity once before without success does not necessarily imply bad faith. See Shelcore, Inc. v. Durham Indus., Inc., 745 F.2d 621, 627 & n. 10, 223 USPQ 584, 588-89 & n. 10 (Fed.Cir.1984).
 
 
 19
 PAULINE NEWMAN, Circuit Judge, concurring in part.
 
 
 20
 I concur generally in the result, but I do not share the court's reasoning or its statements of the applicable law, particularly with respect to the discussions of infringement and contributory infringement.
 
 
 21
 Also, I would hold that the affirmance of the holdings of validity and infringement requires the grant of the requested injunction against future infringement. "[I]njunctive relief against an infringer is the norm". KSM Fastening Systems, Inc. v. H.A. Jones Co., 776 F.2d 1522, 1524, 227 USPQ 676, 677 (Fed.Cir.1985).
 
 
 
 *
 The parties have not separately argued the issue of inducement of infringement, and, accordingly, it is unnecessary to address it in this case