**FINA TECHNOLOGY, INC., and Fina Oil and Chemical Co., Plaintiffs,**

v.

**John A. EWEN, Defendant.**

**Civ. A. No. 3:93–CV–2529–X.**

United States District Court,
N.D. Texas,
Dallas Division.

July 29, 1994.

William David Harris, Jr., Hubbard Thurman Tucker & Harris, David Hugh Judson, Robert H. Mow, Jr., Hughes & Luce, Dallas, TX, for plaintiffs.

Carol Stoner Vance, Bracewell & Patterson, William Fred Hagans, Hagans & Associates, Houston, TX, for defendant John A. Ewen.

John Freeman Booth, David L. Joers, Crutsinger Booth & Kanz, Dallas, TX, for movant Abbas Razavi.

## MEMORANDUM OPINION AND ORDER

KENDALL, District Judge.

NOW before the Court are Plaintiffs' Motion for Partial Summary Judgment, filed on March 7, 1994, Defendant's response to the motion, Plaintiffs' reply to the response, the response of Abbas Razavi to the motion and Defendant's supplemental response containing excerpts from Razavi's deposition. Having considered these filed materials, the summary judgment evidence and the applicable law, the Court concludes that Plaintiffs' motion should be, and hereby is, **GRANTED** in part and **DENIED** in part.

### FACTS

This is a patent suit. The patents at issue focus primarily on the synthesis and chemical composition of metallocene catalysts to polymerize propylene. Defendant began working for Fina Oil in December of 1984 and worked in Fina's polypropylene group at a facility in La Porte, Texas. During Defendant's tenure with Fina, certain inventions informing the patents in suit came to light, although the parties dispute inventorship. While Defendant was with Fina, Exxon Chemical Company, a former employer of Defendant, supposedly began questioning Defendant's work concerning the metallocene patents in which Defendant was involved. In October of 1990, Exxon sued Defendant and

Fina in state court, essentially alleging that Defendant disclosed confidential information and used that information to apply for and obtain patents claiming inventions that belonged to Exxon. Defendant filed cross claims against Fina in the state action, claiming, among other things, causes of action for defamation, invasion of privacy, intentional infliction of emotional distress, invalidity of certain contractual agreements, constructive trust, civil conspiracy and violations of the Texas antitrust laws, all arising from his employment with Fina. During the course of discovery in the state action, Fina learned of Defendant's contention that several patents and related patent applications relating to the polypropylene technology have various inventorship and other statutory defects.

Fina then filed this suit seeking to correct inventorship on certain patents naming Defendant as the sole inventor. Plaintiffs also seek to correct inventorship of another patent naming Defendant and another as coinventors. In another count, Fina seeks a declaration that inventorship on certain patents and patent applications naming both Defendant and at least one other person is correct. Fina seeks a declaration that it lacked deceptive intent in the event that certain patents are found to have incorrect inventorship and a declaration that certain patents comply with various patent-law statutory requirements. Finally, Fina seeks a declaration that to the extent any joint invention is the subject of a valid, enforceable assignment of a coinventor's rights to Fina, Fina has the right to make, use or sell the patented invention without accounting to Defendant, regardless of Defendant's ownership rights, pursuant to 35 U.S.C. § 262.

The instant motion concerns only certain of Plaintiffs' claims. First, Fina moves for a summary judgment that inventorship designations and statutory compliance are correct regarding U.S. Patent Nos. 4,892,851; 5,155,080; 5,225,500; 5,162,278; 5,223,467; 5,223,468; and 5,243,002. Second, Fina seeks a declaration that U.S. Patent Nos. 4,794,096; 4,892,851; and 4,975,403 comply with the requirements of sections 101 and 112 of Title 35. Finally, Fina seeks a summary judgment declaring that certain patents naming

Defendant and at least one other as coinventors have been validly assigned to Fina by at least one other coinventor. This conclusion supposedly would mandate the further conclusion that Fina has the absolute right to make, use or sell the inventions memorialized in the patents without accounting to Defendant even if he is a joint owner. The patents involved in this count are Nos. 4,767,735; 4,892,851; 5,155,080; 5,122,583; and 5,225,500.

## SUMMARY JUDGMENT

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The Court of Appeals for the Federal Circuit undertakes plenary review of a grant of summary judgment. *Keystone Retaining Wall Sys., Inc. v. Westrock, Inc.*, 997 F.2d 1444, 1449 (Fed.Cir.1993).

A material fact is one that may affect the decision, so that the finding of that fact is relevant and necessary to the proceedings. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The evidence submitted by the nonmovant, in opposition to a motion for summary judgment, "is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513. In ruling on a motion for summary judgment, a court must bear in mind the actual quantum and quality of proof necessary to support liability under the applicable law. *Id.* at 254, 106 S.Ct. at 2513. "[T]he inquiry involved in a ruling on a motion for summary judgment ... necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on

the merits." *Id.* at 252, 106 S.Ct. at 2512. "Thus, in ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden." *Id.* at 254, 106 S.Ct. at 2513. The court must assess the adequacy of the nonmovant's response and must determine whether the showing the nonmovant asserts that it will make at trial would be sufficient to carry its burden of proof. *See Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552.

Under the Patent Act, a "patent shall be presumed valid." 35 U.S.C. § 282. The Federal Circuit suggests the importance this presumption bears to patent jurisprudence in the following:

> Under the law set by Congress, a jury or a court may reach a conclusion that a patent remains valid *solely* on the failure of the patent challenger's evidence to convincingly establish the contrary. A patent being presumed valid at birth ... a patentee need submit *no* evidence in support of a conclusion of validity by a court or a jury.

*Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565, 1570 (Fed.Cir.1986). However, the Court notes that the presumption of validity is not itself evidence; it is merely a procedural device that shifts the burden of proof. *See Avia Group Int'l, Inc. v. L.A. Gear Calif., Inc.*, 853 F.2d 1557, 1562 (Fed.Cir.1988). Defendant's burden is heightened, though, by the requirement of proving invalidity by clear and convincing evidence. *Medtronic Inc. v. Intermedics, Inc.*, 799 F.2d 734, 741 (Fed.Cir.1986), *cert. denied*, 479 U.S. 1033, 107 S.Ct. 882, 93 L.Ed.2d 836 (1987). When it applies, "the clear-and-convincing standard of proof should be taken into account in ruling on summary judgment motions...." *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513.

## THE '851 PATENT

### 1.

The patent that seems to be most central to the parties' dispute is titled "Process and Catalyst for Producing Syndiotactic Polyolefins" and lists John A. Ewen and Abbas Razavi as inventors. As noted above,

Fina's motion first concerns the correctness of inventorship and compliance with certain Patent Act statutes, namely sections 101, 111 and 116 of Title 35. Concerning inventorship, Defendant asserts that Razavi neither conceived of the invention nor discoveries, nor any part thereof, claimed in the '851 patent, and characterizes Razavi's contributions to the '851 patent as "technical support." (Resp. at 5.) However, in his affidavit, Dr. Ewen states the following concerning Razavi's contribution:

> Abbas Razavi's contributions to the invention covered by the '851 patent were limited and purely technical. There were five solvent purification stills in the laboratory. The solvents being distilled were pentane, toluene, and methylene chloride (non-coordinating solvents), as well as diethyl ether and THF (coordinating solvents). I instructed Razavi to use one of the non-coordinating solvents that had been distilled (pentane, toluene, or methylene chloride), and I specifically recommended pentane as being the best candidate of the three. Following my instructions, Razavi then used one of these solvents (methylene chloride), to repeat the syntheses of iPrCpFluHfCl[sub 2] and iPrCpFluZrcl[sub 2].

(Aff. John A. Ewen at ¶ 3.) Claim twelve of the patent recognizes the choice that Razavi made: "12. The process of claim 11 wherein the contacting of step (b) is performed in a chlorinated solvent." In a deposition taken in relation to the state litigation, Dr. Ewen admitted that Razavi's choice of methylene chloride was just that—Razavi's choice, not merely a genuflection to a superior's instruction:

> A I also instructed [Razavi] to do the synthesis in toluene or pentane or class-a solvent from that generic group of solvents, as well as other chemists working for me, Kevin Menard. Kevin ended up doing it in toluene, and Abbas selected methylene chloride for that second part of

the reaction. That was his contribution. He decided to use the methylene chloride.

> Q And that was the extent of his contribution?

> A That was the—I was trying to point out the differences in the different synthetic procedures.

> Q Right.

> A And that was the difference, yeah.

> Q Okay. But of all of those differences you listed, the only one that was Dr. Razavi's contribution was using the methylene chloride. Correct?

> A That came out of his head, yeah.

(Resp. of Abbas Razavi, Tab 13, Dep. of Dr. John A. Ewen, Vol. XIII, at 1942–43.)

Dr. Ewen's affidavit and deposition answers demonstrate that Razavi did contribute to the invention and that, contrary to Ewen's recommendation that pentane would be the best candidate, Razavi chose methylene chloride, a choice that the patent claims. Regardless of Ewen's characterization of Razavi's contribution as too minor to accord him inventor status, case law bears out Razavi's entitlement to that status. For instance, one court recognized the solution to a similar problem thus:

> In fact the conception of the entire device may be due to one, but if the other makes suggestions of practical value which assist in working out the main idea and making it operative, or contributes an independent part of the entire invention which helps to create the whole, he is a joint inventor even though his contribution be of minor importance.

*Shields v. Halliburton Co.*, 667 F.2d 1232, 1235 (5th Cir.1982) (quoting 1 A.W. Deller, DELLER'S WALKER ON PATENTS 2d ed. § 40 at 183 (1964)).[1] Regarding the correctness of inventorship of the '851 patent, the Court notes that "[t]he inventors as named in an issued patent are presumed to be correct." *Amax Fly Ash Corp. v. United States*, 514 F.2d 1041, 1047, 206 Ct.Cl. 756 (1975). Defendant has gone no distance to assail this

---

1. The very next sentence of this quotation from *Shields* states "[b]ut if the contribution is the subject of a separate claim in the patent, such person is not a joint inventor." However, this statement does not detract from the Court's con-

clusion. The Federal Circuit has recognized that the "all claims" rule has been abrogated by statute. *SmithKline Diagnostics, Inc. v. Helena Laboratories Corp.*, 859 F.2d 878, 888–89 (Fed.Cir. 1988).

presumption, and in fact it appears that the contribution that Defendant admits Razavi made to the invention actually buttresses Plaintiffs' position that inventorship is correct as stated in the patent.

■ Defendant goes to some length arguing that both he and Razavi claim to be the sole inventor of the patented technology and concludes that the quarrel demonstrates a fact issue on the issue of correctness of inventorship. The Court concludes, though, that even if this dispute does raise a fact issue, it is not material. As concluded above, Defendant's own affidavit and deposition testimony belie any argument that he might make foreclosing Razavi's inclusion as inventor on the '851 patent. Although Defendant might dispute whether Razavi's contribution was legally sufficient to support inventorship, the resolution of that legal issue lies with this Court or the circuit court—not Defendant. Whether Razavi claims sole inventorship is irrelevant to issues under consideration; Razavi is not even a party to the suit, and in any event, although aware of proceedings and their import, he has not sought intervention to have Ewen removed as inventor from any of the patents.

■ Razavi does request in his response to Plaintiffs' motion that certain patents be corrected to show him as sole inventor. However, Razavi "appears" in this suit as a concerned party pursuant to 35 U.S.C. § 256. That provision enables a court to correct inventorship "on notice and hearing of all parties concerned." Razavi, although being heard in relation to inventorship issues, has thus far been reluctant to intervene, has filed no pleading seeking affirmative relief and has paid no filing fee. The Court understands the notice and opportunity-to-be-heard component of section 256 to preserve one's due process rights in relation to property interests. However, the Court does not read that section as allowing a concerned party to function as the equivalent of a party to the suit. Although Razavi has those rights provided by section 256, he may not seek affirmative relief—in this case, correction of inventorship—unless he intervenes. It seems that he could also file a separate suit. The Court concludes that inventorship is correct in a narrow sense: Razavi is properly listed as an inventor, and no party competent to make the request has moved to correct inventorship by removing Ewen. The Court therefore does not address the issue of whether Ewen is properly recorded as an inventor on the '851 patent, or the issue of whether Razavi is the sole inventor of the technology contained in that patent. In that sense, Plaintiffs have demonstrated their entitlement to summary judgment on the issue of correctness of inventorship of the '851 patent.

*2.*

Plaintiffs next seek summary judgment that they have complied with certain statutory requirements, specifically sections 101[2] and 112[3] of Title 35. Defendant does not

---

2. § 101. Inventions patentable

Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.

3. § 112. Specification

The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.

A claim may be written in independent or, if the nature of the case admits, in dependent or multiple dependent form.

Subject to the following paragraph, a claim in dependent form shall contain a reference to a claim previously set forth and then specify a further limitation of the subject matter claimed. A claim in dependent form shall be construed to incorporate by reference all the limitations of the claim to which it refers.

A claim in multiple dependent form shall contain a reference, in the alternative only, to more than one claim previously set forth and then specify a further limitation of the subject matter claimed. A multiple dependent claim shall not serve as a basis for any other multiple dependent claim. A multiple dependent claim shall be construed to incorporate by reference all the limitations of the particular claim in relation to which it is being considered.

appear to dispute Plaintiffs' contentions regarding section 101 but instead attacks Plaintiffs' allegation of compliance with section 112. Relying on the presumption of validity, Plaintiffs maintain that Defendant can produce no evidence to assail their position. Defendant, however, offers that the '851 patent contains certain defective claims:

First, in Column 8, the catalyst product of that procedure (cyclopentadiene coordinated and the fluorene coordinated) makes only atactic polymers and cannot make SPP. See Ewen Depo., Exhibit K, pp. 209–210.

Second, the patent attorneys drafting the application ... claimed a method of synthesis of the ligand which does not make SPP. Claim 3 includes a "catalyst of Claim 1 wherein ME is titanium." The work with titanium had been established as unworkable. Ewen Depo., Exhibit K, p. 211. The only complexes that worked were zirconium and hafnium. Ewen Depo., Exhibit P p. 1713. The claim included elements that had not been reduced to practice prior to filing the patent application including germanium, phosphorous, nitrogen, boron and aluminum.

Third, the idenyl catalyst formulated in Claim 8 cannot make SPP. It can only make atactic polypropylene. Ewen Depo., Exhibit P, p. 1716. It does not work because it is missing bilateral symmetry or at least psuedobilateral symmetry. Id.

Finally, Claim 11 contains standard organometallic chemistry with nothing novel contained in it. Ewen Depo., Exhibit P, p. 1716.

(Resp. at 17–18.)

■ Plaintiffs do not meet the evidence referenced above directly. Instead, pointing to the doctrine of assignor estoppel, they argue that Defendant should not be heard to assail the validity of a patent he supposedly assigned. (See Reply at 7–8.) That doctrine arises from equitable principles and prevents one who has assigned the rights to a patent from later contending that the subject matter

of the assignment is a nullity. *Diamond Scientific Co. v. Ambico, Inc.*, 848 F.2d 1220, 1224 (Fed.Cir.), *cert. dismissed*, 487 U.S. 1265, 109 S.Ct. 28, 101 L.Ed.2d 978 (1988). A determination whether assignor estoppel applies in a particular case requires a balancing of the equities between the parties. *Carroll Touch, Inc. v. Electro Mechanical Sys.*, 15 F.3d 1573, 1579 (Fed.Cir.1993). That determination is committed to the sound discretion of the trial court. *Id.* Several justifications might underlie the application of assignor estoppel, four of the most common being the following: (1) To prevent unfairness and injustice, (2) to prevent one from benefitting from his own wrong, (3) by analogy to estoppel by deed in real estate and (4) by analogy to a landlord-tenant relationship. *Diamond Scientific Co.*, 848 F.2d at 1224 (citing Cooper, *Estoppel to Challenge Patent Validity: The Case of Private Good Faith vs. Public Policy*, 18 CASE W.RES.L.REV. 1122 (1967)). Another rationale concerns preserving the integrity of assignment contracts. *See* Amber L. Hatfield, Note, *Life After Death for Assignor Estoppel: Per Se Application to Protect Incentives to Innovate*, 68 TEX.L.REV. 251, 263–64, 272–76 (1989); Cooper, 18 CASE W.RES.L.REV. at 1128–32.

■ On careful consideration of the summary judgment evidence, the Court concludes that the balance of the equities counsels toward the application of assignor estoppel. There is no dispute that Defendant signed a declaration swearing that the application for the '851 patent contained his invention and that he had "reviewed and underst[ood] the contents of the above-identified specification, including the claims...." (Fina's Reply at Ex. T.) Nor does Defendant dispute that he signed an assignment relating to that patent. Defendant does, however, attack Fina's retention of profits relating at least to the '851 patent because of Fina's alleged "reprehensible and illegal acts" in relation to an employee secrecy agreement, which Defendant claims is "illegal and unenforceable." (*See* Def.'s Second Am.

---

An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and

such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

Cross-cl. at ¶¶ 80–85.) Defendant also claims that "[w]hether proper consideration was given for the assignments, as Dr. Ewen denies, is one of the facts to be weighed." (John A. Ewen's Motion to Strike Part of Fina's Reply, at 3.)

The Federal Circuit has considered a situation similar to that presented here:

> Appellants say there were questions of fact on whether Luniewski was misled on inventorship and patentability and signed the declaration under intimidation and duress. *See Diamond Scientific*, 848 F.2d at 1228, 6 USPQ2d at 2034 (Newman, J., concurring) (assignor may still raise "usual defenses to contract of assignment"). More specifically, appellants argue that coinventor Neuberg made no contribution to the inventions ... and that Luniewski feared losing his job and bonus if he did not sign the declarations.
>
> It suffices to say here that we agree with the district court's determination that no *genuine* issue of *material* fact as to misrepresentation or duress exists. Whether Luniewski was misled on inventorship and patentability is a question relating to the viability of the patent application, not to the validity of the assignment agreement. Hence it is not among the "usual defenses to the contract of assignment."

*Shamrock Technologies, Inc. v. Medical Sterilization, Inc.*, 903 F.2d 789, 794 (Fed. Cir.1990). The Court understands Defendant's contention not to go directly to the validity of the assignment, but instead to the enforceability of the underlying employment agreement. Although Luniewski in *Shamrock Technologies* alleged misrepresentation concerning inventorship and patentability going to the viability of the patent application, Defendant here alleges, apparently, misrepresentation going to an agreement underlying his assignments. In both cases, neither contention goes directly to the validity of the assignment agreement. Although Defendant complains that no consideration properly supports the assignments, the Federal Circuit has noted that "[e]mployment, salary and bonuses are valid consideration for [an] assignment." *Id.; see also Diamond Scientific Co.*, 848 F.2d at 1225.

The application of assignor estoppel against Defendant's arguments of chemically unreasonable claims in the '851 patent preserves the parties' expectations: Fina received an assignment and Defendant executed one, having received consideration for the bargain, and the results of the performance of that contract were merely what the parties expected. This conclusion promotes certainty in the bargaining process, allowing the parties to allocate risks intelligently among themselves and rely later on that allocation. The Court holds that the defendant Ewen assigned his ownership rights. Because Defendant will not be heard to complain of supposed chemically unreasonable claims, Plaintiffs are entitled to the declaration they seek on the second part of their motion.

### 3.

■■■ Next, Fina seeks a summary judgment declaring that certain patents naming Defendant and at least one other as coinventors have been validly assigned to Fina by at least one other coinventor. This conclusion supposedly mandates the further conclusion that, under 35 U.S.C. § 262,[4] Fina has the absolute right to make, use or sell the inventions memorialized in the patents without accounting to Defendant even if he is a joint owner. It is uncontested that Razavi assigned his rights in the '851 patent. However, Defendant suggests that the "privilege" contained in section 262 is "limited ... when one co-owner destroys the other co-owner's privilege to use, make or sell the patent. In such a case the latter is entitled to a share of the value and accounting." (Resp. at 19.) In support of this contention, Defendant refers the Court to a California appeals court decision written in 1924.

In *Haserot v. Keller*, 67 Cal.App. 659, 228 P. 383 (1924), the defendant had invented an improvement to automobile windshield wipers that he desired to have patented. He

---

**4.** § 262. Joint owners

In the absence of any agreement to the contrary, each of the joint owners of a patent may make, use or sell the patented invention without the consent of and without accounting to the other owners.

agreed with the plaintiff, among other things, that the plaintiff would pay for obtaining the patent and marketing the product. The parties also agreed that the plaintiff would receive an undivided one-half interest in the invention and the patent. After application but before issuance of the patent, the defendant represented that he had made further improvements that were of his sole belonging and that the improvement rendered the invention as originally conceived valueless. The trial court concluded that the improvement story was false and concocted in order to induce the plaintiff to sell his undivided one-half interest to the defendant for virtually nothing, which he did. The defendant then sold a license, apparently, granting the exclusive right to manufacture and sell the patented invention in the United States. The court summed up as follows:

> Our conclusion on this branch of the appeal is that appellant, by granting exclusive rights to innocent licensees at a time when he was the apparent owner of all the monopoly created by the reissued letters patent, undertook to and did exercise not only his own individual right as a co-owner but also the individual right which, in equity, belong to respondent as a co-owner, and that therefore appellant was properly held accountable for the profits which accrued to him by his wrongful exercise of respondent's right.

*Id.* at 387. Plaintiffs attempt to distance *Haserot* factually by arguing that "Ewen does not allege that his coinventors defrauded him as was the case in *Haserot.* Nor does he point to any evidence that his coinventors were his employees, instead of Fina's, so that they were obligated to assign their rights to him instead of Fina." (Reply at 9.) Although these may be real differences, the Court fails to see how they detract from Defendant's point. It seems that Defendant alleges that Fina, like the defendant in *Haserot,* wrongfully precluded him from being able to exercise ownership rights under the patent. Although Fina may not have been an inventor, its assignment from Razavi puts in the same shoes as the *Haserot* defendant.

However, the parties lead the Court to no further application of the principle announced in *Haserot,* and the Court's own research failed to reveal any further development. The most important progression to occur between the decision in *Haserot* and the filing of this case appears to be the enactment of 35 U.S.C. § 262. The plain meaning of that section does not seem to contemplate the principle that Defendant asks the Court to recognize. Congress did make an exception for contractual arrangements to the not-accountable provision contained in section 262—"in the absence of any agreement to the contrary"—but failed to add "and in the absence of fraud or inequitable conduct" or similar language. The Court is reluctant to reanimate something that has been untouched for almost seventy years, especially in light of an intervening statute that leaves no room for such an exhumation.

## REMAINING ISSUES

Plaintiffs' motion requests the same relief as outlined above in relation to a host of other patents. However, in light of the Court's analysis regarding the '851 patent, additional extended discourse regarding each remaining patent is unnecessary. The parties note that some of the remaining patents are continuations in part of the '851 patent; however, it is unclear whether the evidence discussed above in relation to the issue of inventorship applies equally to those patents. To the extent that it does, of course, summary judgment would be appropriate. Regarding the other patents, though, the Court concludes that Defendant has come forward with sufficient evidence to warrant trial of the issue of inventorship. On those patents on that issue, summary judgment must be denied.

Concerning part two of Plaintiffs' motion, the Court concluded above that the defendant Ewen assigned his ownership rights and that application of assignor estoppel would preclude Defendant from disputing the validity of patents that he had assigned to Plaintiffs. The other patents that are the subject of the second portion of Plaintiffs' motion, nos. '096 and '403, both note on their faces that Defendant is inventor and Fina Technology is the assignee. The Court's conclusion

concerning assignor estoppel applies equally to these patents.

Finally, Defendant's disputed facts 13 through 17, that Plaintiffs prevented Defendant from independently using the discoveries claimed in patents nos. '735, '080, '583, and '500 are irrelevant given the Court's conclusion that the express meaning of section 262 does not require Plaintiffs to account to Defendant.

**SO ORDERED.**